## LEWIS C. GIBSON *v.* JULIET JAYNE et al.

1. STATUTE OF LIMITATIONS : REMAINDERMAN.—The Statute of Limitations will
   not commence running against a person entitled to property in remainder, until
   the determination of the particular estate.

2. SAME : REMAINDERMAN NOT AFFECTED BY LACHES OF TENANT IN POSSESSION.—
   No *laches* will be imputed to a remainderman, nor will he be affected by the
   *laches* of the tenant of the particular estate.

3. SAME : PRESUMPTION OF DEATH FROM SEVEN YEARS' ABSENCE : WHEN STATUTE
   COMMENCES RUNNING.—When the Statute of Limitations commences to run
   against the complainant upon the death of a third person, and the presumption
   of seven years' absence, without being heard from, is relied upon to establish
   the death of such person, the period at which the statute will commence run-
   ning will be at the expiration of seven years from the time the party was last
   known to be alive.

4. STATUTE OF FRAUDS : REGISTRATION OF DEEDS MAKING LIMITATION IN RE-
   MAINDER : SALE BY TENANT IN POSSESSION : NOTICE.—The right of a remain-
   derman entitled to a chattel under a deed which has never been recorded, will
   not be defeated by a sale thereof made by the tenant of the particular estate

in possession, unless such possession has continued for the space of three years before the sale ; nor even then, if the purchaser had notice of the true condition of the title.  See Hutch. Dig. 638, § 2.  Rev. Code, 358, Art. 2.

5. CHANCERY : BILLS QUIA TIMET.—A court of equity will interpose and grant relief upon a bill *quia timet* to a person having the right of future enjoyment of personal property, when there is any danger of loss or deterioration, or injury to it in the hands of the party entitled to the present possession, or when there is just ground to believe that it will be removed, and placed beyond the reach of the complainant before his right of possession shall accrue.  See 2 Story Eq. § 848.

6. STATUTE OF LIMITATIONS : JOINT COMPLAINANTS.—The tenant for life and the remainderman of personal estate, who join in a bill for its recovery, have not such a joint interest in the property, as will make the Statute of Limitations commence running against both, if at the time the cause of action accrues to one, he be under no disability to sue.

7. CHANCERY : PRACTICE : DEMURRER.—When there are several complainants, and the bill is demurred to, a ground of demurrer assigned as to all will be overruled, if it be bad as to any of the complainants.

APPEAL from the Chancery Court of Simpson county.  Hon. John E. McNair, chancellor.

*W. C. Harper*, for appellant.

*T. P. Ware* and *W. P. Harris*, for appellees.

HANDY, J., delivered the opinion of the court.

This bill was filed by the appellees to recover certain slaves in the possession of the appellant, and to prevent their removal in derogation of the rights of the appellees.

The bill states, in substance, that on the 15th of April, 1839, one Tims, of the State of Alabama, the father of the complainant Juliet, by deed of gift conveyed the slaves in controversy to his daughter Juliet, the wife of Brewster H. Jayne, and William Love Brown, her son by a former husband, jointly, said slaves being then in the possession of said Juliet and her husband, in Simpson county in this State, where they resided.  The terms of this deed are as follows : " which slaves I give as a joint property to my daughter Juliet Jayne, and her son William Love Brown, now about eleven years old; and I hereby appoint Brewster H. Jayne and my daughter Juliet, his wife, to hold and enjoy the right of possession in said

property until my aforesaid grandson William L. Brown shall have attained the age of twenty-one years, when the said property may be divided, and the said William lawfully put in possession of one equal half, as near as the case can be; the other half of said property shall go to the children of my said daughter Juliet by the said Brewster H. Jayne after her death." This deed was recorded in Perry county, Alabama, where the donor resided, but not in this State. At the date of this deed, the said Juliet was the mother of all the the co-complainants except one, and they were all her children by her husband, Brewster H. Jayne. Some time in the year 1840, Jayne disposed of these slaves by exchanging them with the defendant Gibson for other slaves, and received the sum of five hundred dollars in addition to the slaves received by him in the exchange. The bill states that the complainant Juliet does not recollect whether she joined in the conveyance of the slaves to Gibson, but states that the matter was conducted by her husband Jayne, who was not authorized to make the sale; that some time in the year 1840, Jayne removed, with his family and William L. Brown, to Texas, and on the 10th of July, 1842, he was slain by Indians, who, at the same time, took and carried away William Love Brown, who has never since been heard from, though the most diligent inquiries have been made for him; and the bill avers the belief that he is dead, either from wounds received when he was captured, or in some other way; that the complainant Juliet returned, with her children, to this State, in the year 1848, and has since resided here, two of the children having reached majority, and the others being infants; that by the aforesaid deed, the children took a vested estate in remainder in one-half of the slaves conveyed by it, to take effect on the death of the said Juliet, who took a life estate therein, and at the death of William L. Brown, that Juliet took at least one-fourth of the half interest vested in him by the deed, but she claims that she is entitled to the whole of his interest, under the laws of Texas, as he died without issue or descendants, and leaving no brothers or sisters of the whole blood, and she being, therefore, entitled as his heir; and that the complainants, her children, are entitled in remainder to the one undivided half of the property, at the death of their mother, which the bill charges will be prejudiced or entirely lost to them, as the defendant will remove

the slaves beyond the jurisdiction of the court. The bill charges that Gibson knew, when he obtained the slaves, that they did not belong to Jayne, but that they were the property of William Love Brown and the complainants, and offers to restore to him the slaves received from him in exchange, and now in the complainants' possession. The prayer is for an account of hires, for discovery, for recovery of the slaves, for the writ of sequestration to the sheriff to seize and hold the slaves, &c.

The defendant demurred to the bill on several grounds: 1st. The Statute of Limitations as to all the complainants. 2d. Lapse of time generally. 3d. That the complainant Juliet Jayne, the mother, is barred by the statute. 4th. Want of equity in the bill. This demurrer was overruled, and hence this appeal is taken.

The first question for consideration arises upon the first ground of demurrer, and is, whether the Statute of Limitations is a bar to the recovery of all the complainants upon the case as stated in the bill; for if any of the complainants are not barred, this ground of demurrer, being general and denying the right of all of them to the relief sought, was properly overruled. It is like a demurrer to an entire bill, which must be overruled if the bill be sufficient for part of the relief sought.

It appears by the statements of the bill, and the deed of gift exhibited with it, that the children of Mrs. Jayne, who are co-complainants with her in the bill, are entitled to an estate in remainder in one-half of the slaves, to take effect in possession after the determination of her estate for life. As to them, the statute did not commence to run until the determination of the particular estate; for until then, they are not entitled to the possession, and no *laches* is to be imputed to them, nor are they affected by the *laches* of the party holding the particular estate. *Jackson* v. *Sillick*, 8 John. Rep. 269; *Martin* v. *Woods*, 9 Mass. 377; *Jackson* v. *Jackson*, 5 Cowen, 103. Yet they have the right to file their bill to prevent the loss of the property by the conduct of the party holding it, and where there is just ground to believe that he will remove it, and place it beyond their reach, so that it will be lost to them when their right of possession shall be established by the determination of the particular estate. 2 Story's Eq. Jur. § 845. And such is the character of the bill as to the children. Their claim and inte-

rest are not, therefore, in the same right, and joint in their nature with the claim of their mother ; and the rule, that where one of several parties entitled to a joint action, is under no disability at the time the action accrues, if the action be not brought in due time, all will be barred, is not applicable to this case.

This ground of demurrer was, therefore, not well taken. And the same reason is applicable to the second ground of demurrer, and shows that it was properly overruled.

The third ground of demurrer relies upon the Statute of Limitations, as a bar to the right of Mrs. Jayne to recover for her interest in the slaves.

Her right of recovery, as set forth in the bill, is placed on two grounds : first, as tenant for life of one moiety of the slaves, being the interest given to her for life in that part of them which were to go to the children ; and secondly, her interest in the part of the slaves belonging to William Love Brown, either one-fourth or the whole of that interest, as his distributee.

So far as her estate for life under the deed is concerned, it is clear that her right of action accrued upon the death of her husband, in July, 1842, and certainly upon her return to this State, in the year 1848. Yet this bill was not filed until the lapse of nearly ten years from that latter time ; and there can be no doubt but that the statute bars her recovery upon that right.

As to her right as distributee of William Love Brown, that is placed by the bill distinctly on the ground that he is dead, and that is averred to be the fact because all inquiries for him since his capture have been unavailing, and because of the presumption of death after the lapse of seven years from the time of his capture, and not having been heard from since his capture. It must be taken as true, for the purposes of the demurrer, that Brown is dead ; for otherwise, the complainant, Mrs. Jayne, could not claim the right which she sets up in the bill, as distributee of his interest in the slaves, and as to that part of her claim, the demurrer would prevail on another ground. What then must be taken as the period of his death, with reference to the Statute of Limitations ? The bill alleges that he was captured in 1842, and has never been heard of since, and relies on the presumption of law, arising therefrom, that he is dead. That presumption, of course, was operative

in 1849, seven years after his capture ; and if it has any effect, as the bill claims it has, it must take effect at that time. If this be not true, the bill shows no sufficient title in Mrs. Jayne to the share of Brown in the slaves ; for there is nothing to show that he is dead. Hence, in order to maintain her title in this respect, it must be taken that he was dead in 1849 ; and, of course, the right of Mrs. Jayne to his estate accrued, if at all, at that time, and is barred by the statute. But if he was alive at that time, he would then have attained to his majority, and the statute commenced running as to his claim, and it was barred by not bringing his action within three years from that time. If it was barred as to him, it was also barred as to Mrs. Jayne, who claims under him.

It appears, therefore, to be clear that the claim of Mrs. Jayne, on either of the grounds upon which it is founded in the bill, is barred by the statute, and that this ground of demurrer was well taken.

Upon the remaining ground of demurrer, it is insisted, by the appellant's counsel, that the deed of gift was never recorded in this State, the donees being domiciled here and the property being in their possession at the date of the deed, and the deed being then made with reference to the laws of this State, and hence that the defendant was not bound to take notice of the deed, and it is fraudulent and void as to him, under the Statute of Frauds. This position is founded on a misapprehension of the Statute of Frauds. Under its provisions, this deed might have been void as to the *creditors of the donor* and subsequent purchasers *from him*, it not being recorded in the county in this State where the property was, and if possession had not been delivered to the donees; or it might have been void as to purchasers without notice from the *parties having possession*, the deed not being there recorded, if possession had been continued in those parties for the *space of three years*. But neither of these cases is here presented ; and it appears that the purchase of the defendant from Jayne was made in less than two years after the execution of the deed ; so that it does not appear that Jayne had possession for such length of time as to render a sale made by him to the defendant, effectual under the statute. But in addition to this, the bill alleges that the defendant had notice of the condition of the property when he pur-

chased; and he could not, therefore, in any point of view, claim protection as a purchaser without notice, as the case is presented on demurrer.

It is also insisted that the deed of gift, having been made before the statute in relation to the rights of married women, passed in the year 1839, went into operation, did not vest an estate in the slaves in the wife to her separate use, but that the slaves thereby given to her became the property of the husband. This might be true, to the extent that the deed conveyed an estate in the slaves to the wife; but the only estate given to her by the deed is an estate for life in one-half of the slaves, which were to go to her children on her death, and to that extent alone would Jayne have been authorized, under any view, to sell the interest conveyed to her by the deed, to the defendant. As the defendant's right, to that extent, is protected by the Statute of Limitations, as is above shown, it is unnecessary to consider whether the sale of Jayne to him was effectual in law to convey that interest; because, conceding that it was not legally conveyed, yet her right founded thereon is barred by the statute.

The fourth ground of demurrer is, therefore, untenable.

But the court erred in not sustaining the third ground of demurrer; and for that error, the decree is reversed, the demurrer sustained as to Mrs. Jayne, and the bill dismissed as to her, and the decree is affirmed as to the other complainants, and the cause remanded, with directions that the defendant answer the bill as to the other complainants within sixty days.