[No. 10651.   Department One.   February 21, 1913.]

M. LOUISE McDOWELL et al., Respondents, v. H. C. BECKHAM et al., Appellants.[1]

JUDGMENT—DECREE IN PROBATE—CONCLUSIVENESS—COLLATERAL AT-TACK. An erroneous decree in probate by a court having jurisdiction, admeasuring dower, not appealed from, fixes the widow's interest and is conclusive, and cannot later be collaterally attacked by grantees of the widow claiming that she owned a half interest in fee under the community property laws.

LIFE ESTATES—ADVERSE POSSESSION—HOSTILE POSITION—LIFE TENANT—RIGHTS OF REMAINDERMAN. Remaindermen are not bound to assert their title during the lifetime of the life tenant, and adverse possession under the ten-year statute of limitations, Rem. & Bal. Code, § 156, cannot be claimed, as against them, under a deed from the life tenant purporting to convey the fee.

LIFE ESTATES—ADVERSE POSSESSION—ACTS CONSTITUTING—CUTTING TIMBER. Cutting timber by a life tenant is not necessarily an act of possession, but is usually an act of waste.

LIFE ESTATES—ADVERSE POSSESSION—"TITLE." One claiming title under a deed of the fee from the life tenant cannot hold adversely to the remaindermen, under Rem. & Bal. Code, § 786, the seven-year statute of limitations for the recovery of lands held adversely under title in law or equity; "title" as there employed meaning a fee simple and not a limited fee.

[1]Reported in 130 Pac. 350.

LIFE ESTATES—ADVERSE POSSESSION—CLAIM AND COLOR OF TITLE—
GOOD FAITH. The payment of taxes for seven years under color and
claim of title in good faith, within Rem. & Bal. Code, § 789, can-
not be asserted, as against remaindermen, under a deed from the
life tenant purporting to convey the fee, as the claim cannot be as-
serted in good faith.

REMAINDERS—RIGHT OF ACTION—LIMITATION AND LACHES. Re-
maindermen are not guilty of laches in failing to assert title during
the lifetime of the life tenant, even if the life tenant conveyed his
interests by deed purporting to convey the fee.

REMAINDERS—WASTE—RIGHT OF ACTION. The statutory right of
action for waste by remaindermen may be waived without creating
or defeating a title to the estate.

LIFE ESTATES—ADVERSE POSSESSION—PAYMENT OF TAXES. It be-
ing the duty of a life tenant to pay taxes, he cannot assert title
against remaindermen by the payment of taxes under the seven-year
statute of limitations.

Appeal from a judgment of the superior court for King
county, Gay, J., entered April 30, 1912, upon findings in
favor of the plaintiffs, in proceedings to distribute a con-
demnation award. Affirmed.

*P. V. Davis* (*S. S. Langland,* of counsel), for appellants.

*Higgins & Hughes* (*Hyman Zettler,* of counsel), for re-
spondents.

CHADWICK, J.—One Marshall F. Moore died intestate on
February 27, 1870, leaving a widow, Fanny Moore, and three
children, M. Louise Moore, now McDowell, now aged 49
years; Thomas Ewing Moore, now 43 years old; and Frank
Moore, now 46 years old. The decedent left an estate con-
sisting of real property, situate in King and Thurston coun-
ties. The estate was administered in Thurston county, where
the dower interest of the widow was admeasured. A life
estate in the property in King county was set over and ac-
cepted by her. These proceedings were had on August 1,
1871. On April 29, 1870, Fannie Moore, the widow, duly
made, executed, and delivered to one E. P. Van Trump her

general power of attorney, authorizing and empowering him
to "enter into and take possession of all lands in which she
then was or might thereafter be entitled to or interested in
and to grant, bargain, sell the same, or any parcel thereof,
for such sum or price, and on such terms, as to him should
seem meet; and for her and in her name to make, execute,
acknowledge, and deliver good and sufficient deeds of convey-
ance for the same," etc.  This instrument was duly recorded
on April 3, 1871, in the record of deeds of King county.  On
February 17, 1883, Fanny Moore, acting by and through
her attorney in fact, Van Trump, conveyed the King county
lands to Samuel C. Woodruff.  This deed was executed for a
valuable consideration, and purported to convey the full fee
simple title to the lands in controversy.

The land passed from Woodruff, and through a chain of
title, regular upon its face, to various grantees.  The land
was at one time platted as an addition to the city of Seattle,
and afterwards vacated and then platted again, and is now
embraced within the plat lines of Dwight's addition to the
city of Seattle, of which the appellants Beckham are the
owners of lots 78 and 79, which they have held under a paper
title since June 5, 1889, since which time they have paid all
taxes and assessments levied thereon.  The land was origi-
nally covered by a growth of merchantable timber which has
been logged off.  The land, so far as the record shows, al-
though we do not go beyond the lots in controversy, is still
open and unoccupied.

Under a municipal improvement proceeding prosecuted by
the city of Seattle, damages were awarded to respondents for
the taking and damaging of the lots owned by appellants;
whereupon the respondents, the heirs of Moore, claiming the
remainder, petitioned the court for an order distributing the
award between them and the grantee of their mother whose
life tenancy is admitted.  This the court did.  The effect of
this ruling being to limit the estate of appellants to the life
of Fanny Moore, she being still alive, they have brought the

case here, asserting their title under several theories which we will discuss in their proper order.

We are invited to a discussion of the statutes of 1869, 1871, and 1873, abolishing dower and creating our community property system, it being contended that, at the time of the death of Marshall F. Moore, the community property statutes were in effect and conclusive of the rights of the deceased and his relict; that, admitting that the legislature could not so legislate as to deprive an owner of his property, by taking one half thereof and giving it to his spouse, yet nevertheless, the right of dower being inchoate and resting in expectancy, that it was within the power of the legislature to abolish it and in lieu thereof substitute for the life estate a full estate in one-half of the property owned by the deceased spouse; that, upon the death of the owner, although the statute be inoperative in his lifetime, it would nevertheless operate as a statute of descent, and that Fannie Moore, having then one-half of the property in her own right and having conveyed the whole thereof, her children, being also the owners of one-half in their own right, would be foreclosed to assert title as against the plea of the general and special statutes of limitations, laches, and estoppel, all of which are asserted in aid of appellants' claims.

However this might be as between Fannie Moore and these appellants, the rule cannot be invoked against the respondents, who were put in the position of remaindermen subject to the life estate of Fannie Moore by a court of competent jurisdiction. We may admit that the decree admeasuring dower was entered upon a mistaken conception of the law, but it was duly entered and not appealed from, and it has fixed the relation of the respondents to the land in controversy. We so held in *In re Ostlund's Estate*, 57 Wash. 359, 106 Pac. 1116, 135 Am. St. 990. The holding in that case was elaborated in the later case of *Alaska Banking & Safe Deposit Co. v. Noyes*, 64 Wash. 672, 117 Pac. 492, and needs no further discussion. This rule is well founded in reason

and is sustained by the authorities, the leading case being that of *Case of Broderick's Will*, 21 Wall. 503, where it was sought to show in a collateral proceeding that, notwithstanding an order of a probate court admitting the will to probate and fixing the status of those interested in the inheritance, the will was forged.

Passing this point, we will discuss the pleas in bar. The ten-year statute of limitations reads:

"The period prescribed in the preceding section for the commencement of actions shall be as follows:—Within ten years,—1. Actions for the recovery of real property, or for the recovery of the possession thereof; and no action shall be maintained for such recovery unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the premises in question within ten years before the commencement of the action." Rem. & Bal. Code, § 156.

Clearly under this statute the basis of a claim of title must rest in adverse possession. It assumes ownership and seizen, and as we have heretofore held, these are presumed to continue until an adverse possession of the property has continued for the ten-year period. See cases collected in note, Rem. & Bal. Code, § 156. Now, assuming that the respondents are remaindermen and that their estate is dominant to the present life estate of Fanny Moore, they were not bound to assert their title or take notice of the acts of her grantees or transmissions of the title to the subordinate estate during the life of the ancestor; for, under the well-known principles of the common law, their estate although vested is not to be enjoyed until the determination of the life estate (2 Blackstone Commentaries, 164; 4 Kent, Commentaries, 197) this, under the theory that possession in another is not hostile to, but consistent with, the dominant estate.

There has been no physical possession except the cutting of the timber, and this is not necessarily an act of possession, but is an act of waste. But granting possession, the only act from which an adverse possession might be implied is the

transmission of title through the several recorded deeds. Here again we are met by the common-law rule that a remainderman is not bound to take notice of, nor is he bound by, deeds made subsequent in time to the creation of his interest. This rule is general and applies to all. An owner as against an outstanding subordinate estate may rest secure in reliance upon his record title; for, if it were otherwise, a lessee for a term, or any one in possession, might secure a deed from a stranger and thus initiate a paper title. That the object of our registry acts is for the benefit of subsequent holders and not for the protection of prior owners, has been held by this court. *McDonald & Co. v. Johns*, 62 Wash. 521, 114 Pac. 175, 33 L. R. A. (N. S.) 57. We find no place to apply the ten-year statute, unless the alleged waste was sufficient to start the running of the statute, a question we shall discuss presently.

The seven-year statute of limitations: It is next contended that, the appellants having been in actual, open, and notorious possession of the property for seven successive years, as evidenced by the platting and cutting of the timber and payment of taxes, Rem. & Bal. Code, § 786; or, if these features be eliminated and we hold that the land is vacant and unoccupied, that, having color of title as evidenced by the deed from the life tenant and having paid taxes for seven successive years, they should be held to be the owners according to the purport of their paper title. Rem. & Bal. Code, § 789. What we have said with reference to the ten-year statute answers, in the main, the arguments made under these sections of the code. These sections are not to be extended beyond their terms and necessary implications. They were drawn to protect rights, not to defeat them. Section 786 is not available, because appellants have no connected title in law or equity deducible of record, etc., as therein provided. The word "title" as there employed means a fee simple title, or one that equity will convert into a fee simple. Here the title was, and must remain during the life of the

ancestor, a limited fee beginning with the apportionment of her dower and ending with her life. Nor does § 789 aid appellants. While this court has held, in *Miller & Sons v. Simmons*, 67 Wash. 294, 121 Pac. 462, and cases there cited, that a void deed is a sufficient color of title to start the statute, the right to hold land under these statutes does not depend on a deed alone but upon a claim of title asserted in good faith. *Lara v. Sandell*, 52 Wash. 53, 100 Pac. 166. There can be no such claim where the grantee takes a deed with knowledge, either actual or constructive, that his grantor is conveying that which is not his own. *Petticrew v. Greenshields*, 61 Wash. 614, 112 Pac. 749; *Brodack v. Morsbach*, 38 Wash. 72, 80 Pac. 275. "A purchaser from the life tenant takes no greater interest than the interest of the life tenant." *Blair v. Johnson*, 215 Ill. 552, 74 N. E. 747.

In this case appellants either knew, or should have known, of the outstanding estate and that their title was subordinate to it. Persons may assert title to land, but the law fixes the time for the statute to begin to run against the remainderman, and unless that time has come, all pleas of the statutes of limitations must be unavailing; for the law is that a remainderman is, during the continuance of the precedent particular estate, under legal disability. *Jewett v. Jewett*, 10 Gray 31.

"The statute of limitations does not begin to run against the right of a remainderman to recover his remainder interest or establish his title to the same until after the determination of the preceding particular estate; nor is he guilty of laches in failing to assert his claim before his right to the possession of the property accrues. But this rule as to actions of a possessory nature does not apply to actions for injuries which the remainderman may maintain during the continuance of the preceding particular estate." 16 Cyc. 659, and cases there cited.

Hence, where a life tenant wrongfully conveys land in fee, limitations do not begin to run until the death of the life

tenant. *Griffin v. Thomas*, 128 N. C. 310, 38 S. E. 903; *Rice v. Bamberg*, 59 S. C. 498, 38 S. E. 209; 1 Cyc. 1058.

It is further argued that the object of § 785 is to give a right of action "against the person claiming the title or some interest therein," and that having this right the appellants have been guilty of laches; aside from the fact that we will not, in the absence of some controlling equity, ignore the statutes of limitations and apply the doctrine of laches. *Petticrew v. Greenshields, supra; Roger v. Whitham*, 56, Wash. 190, 105 Pac. 628, 134 Am. St. 1105; *Cordiner v. Finch Inv. Co.*, 54 Wash. 574, 103 Pac. 829; *Starr v. Long Jim*, 52 Wash. 138, 100 Pac. 194. We find that a remainderman "is not guilty of laches in failing to assert his claim before his right to the possession of the property accrues." 16 Cyc. 659; *Turner v. Hause*, 199 Ill. 464, 65 N. E. 445; *Gibson v. Jayne*, 37 Miss. 164; *Graham v. Stafford*, 171 Mo. 692, 72 S. W. 507; *Pettyjohn's Ex'r v. Woodrooff's Ex'r*, 77 Va. 507; *Aiken v. Suttle*, 4 Lea (Tenn.), 103. As covering both the seven-year statute and the charge of laches, we quote from *Higgins v. Crosby*, 40 Ill. 260:

"There is no dispute that possession and payment of taxes, under claim and color of title for seven successive years, will bar a recovery in all cases where there is a present right of possession during the period for which the statute is required to run and its requirements are performed. The act of 1839 has been repeatedly held by this court to be a limitation law, and it can only be sustained upon that ground. And it is believed to be universally true that the bar of the statute can never be invoked, unless the party against whom it is sought to be used has had the opportunity of asserting his right during the statutory period. If the right is of such a character that a party is not entitled to make an entry, the statute can never run. It can only begin after the right to enter has accrued. Where the title sought to be defeated by the bar is a reversion or a remainder, the holders of such titles have no right of entry, and, having none, they are guilty of no *laches* in failing to make an entry, or in asserting the right. Such titles are not present and existing rights of

possession, but only a present interest, with a future right of possession. It would be unprecedented to hold that a right of entry was barred where such a right had never accrued. A party cannot be prejudiced by the non-assertion of a right that does not exist . . . When the particular estate is spent, the bar falls with that estate, and the right of entry then accrues to the remainderman or reversioner, and then, and not till then, the statute begins to run against him."

It follows from what we have said that respondents are not estopped by their failure to restrain or recover damages for the waste committed. Formerly a remainderman could not maintain an action for waste at all; he must have had possession either actual or constructive. The right first became a matter of equitable grace, and has since been generally recognized or declared by statute. Rem. & Bal. Code, § 938. *McLeod v. Ellis*, 2 Wash. 117, 26 Pac. 76. The action for waste is personal in its character, and may be waived by the remainderman; at any rate, the act of waste would neither create nor defeat a title to the estate.

Neither can any right be predicated upon the payment of taxes. It is the duty of a life tenant to pay taxes. Consequently the remaindermen are not estopped thereby. 16 Cyc. 632; 12 Decennial Digest, Title, Life Estates, § 18. Finally, the acid test is put onto this case when we assert that, at no time since the rights of appellants and their grantors were initiated, could the respondents have stated a cause of action against them either to recover possession or to quiet title.

This being so, the judgment of the lower court is affirmed.

CROW, C. J., PARKER, MOUNT, and GOSE, JJ., concur.