FILED
COURT OF APPEALS
DIVISION II

2013 APR 30  AM 8: 38

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JEAN ANN DAVOLT, as guardian for JOSEPH DUANE BAILEY, | No. 42823-7-II |
| Respondent, | |
| v. | |
| JIMMY F. CAMPBELL and CHRISTINA L. CAMPBELL, husband and wife, | UNPUBLISHED OPINION |
| Appellants. | |

HUNT, J. – Jimmy F. Campbell and Christina L. Campbell (formerly husband and wife) appeal the superior court's grant of summary judgment to Jean Ann Davolt, in her capacity as Joseph Duane Bailey's guardian, in a quiet title action. The Campbells argue that (1) they received half of the property through Jimmy's[1] mother, Mary Margaret Bailey's, quitclaim deed, which purported to transfer to them her interest in marital community property; and (2) although her husband, Joseph Duane Bailey (Bailey), had neither signed nor acknowledged his wife's quitclaim deed, it became valid, after her death, when his actions demonstrated his approval of

---

[1] We sometimes refer to the Campbells and the Baileys by their first names for clarity. We intend no disrespect.

the property's transfer, despite the contrary operation of the Baileys' community property agreement.

We hold that Mary's quitclaim deed was invalid because it did not meet RCW 26.16.030's requirements for conveying community property. We further hold that Bailey's actions after Mary's death, when their community property agreement operated to convey her community property to him as his separate property, neither cured her quitclaim deed's invalidity nor operated independently to convey property to the Campbells. We affirm.

FACTS

I. THE PROPERTY

In 1967, Jimmy Campbell's mother, Mary, married Joseph Bailey. A year later, the Baileys purchased a house in Longview, Washington. In 1998, the Baileys executed a community property agreement, which provided in part:

> 1. The parties agree that all property presently owned by either of them (including each party's separate property), is now their community property, regardless of the manner in which title to the property is held;
>
> . . .
>
> 3. *Upon the death of either* of the parties hereto:
>
> (a) *All community property* as defined in the preced-ing [sic] paragraphs *shall immediately vest in the survivor* of them; and
>
> . . .
>
> 5. This Agreement will apply to both real estate and personal property, whether located in the state of Washington or elsewhere, to the extent permitted by law.

Clerk's Papers (CP) at 26 (emphasis added).

In April 1999, Mary signed a quitclaim deed purporting to transfer to the Campbells her interest in this community property.[2] Bailey did not sign this quitclaim deed; on the contrary he did not become aware of it until after Mary's death in May 2001. The Campbells attempted to record this quitclaim deed in July 2001; but the county auditor "informed [them that] there was a community property agreement" relating to the property and, according to Christina, "in order to record the deed, [she] would need approval from [Bailey]." CP at 2.

Christina contacted Bailey, who, according to the Campbells, agreed to sign any documents necessary to allow the Campbells to file his late wife's April 1999 quitclaim deed because he knew that she had intended the Campbells to have her half of the Longview property. Accordingly, on July 26, 2001, Bailey signed a Real Estate Excise Tax Affidavit and a Real Estate Excise Tax Supplemental Statement, both of which stated that half of the property was a gift to the Campbells. A week later, on August 2, the county recorded Mary's April 1999 quitclaim deed. Bailey continued to live in the marital home on the Longview property.

Nine years later, Bailey vacated the home. The Campbells attempted to "perfect [their] interest" in the property by either selling the home or renting it out and dividing the profits. CP at 3. But Christina "was informed that there was a cloud on [her] title" based on an affidavit Bailey had filed with the county in May 2002. CP at 3. Bailey's May 2002 affidavit stated that

---

[2] The quitclaim deed stated that the deed transferred the Longview property "together with all after acquired title of the grantor(s) therein." CP at 6. In October 1999, Mary also wrote a handwritten note stating, "I give my half of Real Estate to Jim F. Campbell and Christina L. Campbell." CP at 7.

3

under the community property agreement, the Longview property had passed to him upon his wife's death in May 2001, before the Campbells attempted to file their quitclaim deed.

In an attempt to clear the property's title, Christina asked Bailey sign a new quitclaim deed granting the Campbells 50 percent interest in the Longview property. In September 2010, Bailey signed this quitclaim deed, and the Campbells filed it.

## II. PROCEDURE

Meanwhile, Bailey's sister Jean Ann Davolt apparently filed a petition to establish a guardianship for him. Under a power of attorney, she had handled his finances since July 18, 2001. Two months after the Campbells filed Bailey's September 2010 quitclaim deed, the court appointed Davolt as Bailey's guardian.

On Bailey's behalf, Davolt filed an action to quiet title in the Longview property. She asserted that (1) shortly before she became Bailey's guardian, the Campbells had taken him to a credit union and had him sign papers, including the September 2010 quitclaim deed; (2) Bailey had been unaware of what documents he had signed and their contents; (3) Bailey had lacked the capacity to sign this quitclaim deed; and (4) the Campbells had exerted undue influence over Bailey to sign the quitclaim deed.

Davolt moved for summary judgment on the validity of the September 2010 quitclaim deed. The superior court found that Bailey had been incompetent when he signed the deed; it granted partial summary judgment and set aside Bailey's September 2010 quitclaim deed.[3] The

---

[3] The Campbells do not appeal this order.

superior court reserved ruling on whether its finding and partial summary judgment resolved the Campbells' entire quiet title action.

Davolt again moved for summary judgment, this time arguing that (1) Mary's April 1999 quitclaim deed was not valid because it purported to transfer community property without the signature and acknowledgement of both parties required under RCW 26.16.030; and (2) by operation of the community property agreement, the property had become Bailey's sole property when Mary died in 2001. The Campbells responded that Mary had intended to gift them with her half share of the property and that Bailey had

> joined in that gift when he agreed to accompany [the Campbells] to the Auditor's office, agreed to the recording of the deed, and acknowledged that intent by signing a Real Estate Excise Tax Affidavit under penalty of perjury, and a Real Estate Excise Tax Supplemental Statement.

CP at 29-30. The Campbells further asserted that, in signing these forms in July 2001 (*after* Mary's May 2001 death), Bailey had "modified" his and Mary's community property agreement. CP at 31.

The superior court found that Mary's April 1999 quitclaim deed (1) "pertained to community property," (2) "did not contain the signatures and acknowledgements of both spouses as required by RCW 26.16.030," and (3) thus had not operated to convey Mary's half community interest in the property when she executed the deed. CP at 157. The superior court granted Davolt's second summary judgment motion and quieted title in the Longview property in Davolt, in her capacity as Bailey's guardian. The Campbells appeal this second summary judgment order.

ANALYSIS

The Campbells argue that Bailey's 2001 act of signing the real estate excise tax documents to assist them in filing Mary's April 1999 quitclaim deed modified or rescinded the Baileys' community property agreement and evinced his joining in or acknowledging the transfer of Mary's half of the community property as Mary had intended. This argument fails because (1) Mary's 1999 quitclaim deed did not meet the RCW 26.16.030 requirements for conveying community property; (2) therefore, Mary's quitclaim deed did not effect a transfer of property to the Campbells; and (3) when Mary died in May 2001, her half of the community property transferred to Bailey under their community property agreement.

### I. STANDARD OF REVIEW

We review summary judgment orders de novo, performing the same inquiry as the superior court. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004). The superior court properly grants summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Hisle*, 151 Wn.2d at 861 (citing CR 56(c)). The burden is on the moving party to demonstrate that summary judgment is proper. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). We consider all the facts submitted and the reasonable inferences from them in the light most favorable to the nonmoving party; and we resolve any doubts about the existence of a genuine issue of material fact against the moving party. *Atherton*, 115 Wn.2d at 516. Summary judgment is appropriate only if, from all the evidence, reasonable persons could reach but one conclusion. *Wilson v. Steinbach*, 98 Wn.2d 434, 437,

656 P.2d 1030 (1982), *superseded by statute on other grounds as stated in Faust v. Albertson*, 167 Wn.2d 531, 538, 222 P.3d 1208 (2009).

## II. NO VALID TRANSFER OF MARY'S HALF OF COMMUNITY PROPERTY

### A. Mary's 1999 Quitclaim Deed Invalid

A gift of any community property must have the express or implied consent of both spouses. RCW 26.16.030(2); *In re Marriage of Schweitzer*, 132 Wn.2d 318, 331, 937 P.2d 1062 (1997). When the gift involves a transfer of community real property, our legislature has made this consent requirement even more stringent:

> Neither person shall sell, convey, or encumber the community real property *without the other spouse* or other domestic partner *joining in the execution of the deed* or other instrument by which the real estate is sold, conveyed, or encumbered, *and such deed* or other instrument *must be acknowledged by both spouses* or both domestic partners.

RCW 26.16.030(3) (emphasis added).[4]

The parties do not dispute that when Mary signed the April 1999 quitclaim deed, the Longview property was the Baileys' community property. Nor do the parties dispute that when Mary Bailey signed the April 1999 quitclaim deed, Bailey had not given his express or implied consent to the transfer, had not acknowledged or joined in the execution of the deed or any other instrument purporting to transfer the real property, and had not even been aware of his wife's purported gift. We hold, therefore, that because Mary's April 1999 quitclaim deed did not comply with RCW 26.16.030, it was not valid to convey her half of the community property to

---

[4] The legislature amended this statute in 2008 to include registered domestic partnerships. LAWS OF 2008, ch. 6, § 604. This amendment did not change the relevant text; thus, we cite the current version of the statute.

the Campbells. Furthermore, the Campbells presented no evidence that Mary later acquired any separate interest in the property that was not subject to RCW 26.16.030.

B. Mary's Community Property Transferred to Bailey When She Died May 2001

The Campbells further argue that Bailey's later, July 2001 signing the excise tax documents effectively cured the statutory defect and validated Mary's April 1999 quitclaim deed. We disagree. Even assuming, without deciding, that Bailey's later actions could have cured any defect in Mary's statutorily noncompliant quitclaim deed, the Baileys' community property agreement automatically operated to convey Mary's half of the community property to Bailey upon her death in May 2001, two months *before* Bailey signed these tax documents; thus, these July 2001 documents could not have cured any defect in Mary's invalid 1999 quitclaim deed.

Under RCW 26.16.120,[5] a husband and wife may enter into a community property agreement designating their property as community and vesting title in the surviving spouse on the death of the other. Such agreements transfer title to all community property to the surviving spouse as that surviving spouse's separate property *immediately upon the death of the other spouse. See v. Hennigar*, 151 Wn. App. 669, 673, 213 P.3d 941 (2009), *review denied*, 168 Wn.2d 1012 (2010); *see also In re Estate of Bachmeier*, 147 Wn.2d 60, 64, 52 P.3d 22 (2002) (citing Harry M. Cross, *The Community Property Law in Washington (Revised 1985)*, 61 WASH. L. REV. 13, 101 (1986)).

---

[5] The legislature amended this statute in 2009 and 2008. *See* LAWS OF 2009, ch. 525 § 18; LAWS OF 2008, ch. 6, § 612. These amendments are not relevant to this case; thus, we cite the current version of the statute.

## C. Community Property Agreement Remained in Effect

Nevertheless, as with other contracts, parties may abandon their community property agreement by *mutually* manifesting an intent to do so, whether by word or deed. *Higgins v. Stafford*, 123 Wn.2d 160, 165, 866 P.2d 31 (1994).[6] But an "[u]ncommunicated subjective mutual intention to abandon is not enough." *In re Estate of Lyman*, 7 Wn. App. 945, 949, 503 P.2d 1127 (1972), *aff'd*, 82 Wn.2d 693, 512 P.2d 1093 (1973). Nor can a unilateral act inconsistent with the community property agreement rescind the agreement. *Bachmeier*, 147 Wn.2d at 66. Accordingly, the operative words for abandoning or rescinding a written community property agreement, such as the Baileys' agreement here, are "mutually manifested intent." *See Higgins*, 123 Wn.2d at 165; *see also Bachmeier*, 147 Wn.2d at 66; *Lyman*, 7 Wn. App. at 948. Applying these rules here, we hold that the record does not show such mutually manifested intent to depart from Baileys' community property agreement.

Taken in the light most favorable to the Campbells, the evidence does not give rise to questions of fact about whether (1) Bailey impliedly or expressly consented to his wife's purported gift of her share of the Longview property to the Campbells *before* her death in May 2001 (which period included her 1999 quitclaim deed); (2) the Baileys manifested a *mutual* intent to abandon or to modify their community property agreement specifically to allow Mary to transfer her community share of the Longview property *before* her death in May 2001, when the community property agreement's transfer provision immediately took effect to transfer her share

---

[6] Westlaw incorrectly states that *Higgins v. Stafford* was overruled as recognized in *Taylor v. Maughan*, 2012 WL 3306611. The "overruling" to which *Taylor* refers is in the parenthetical phrase following the *Higgins* citation, but it is not directly related to *Higgins*.

to Bailey as his separate property; or (3) Bailey manifested a general intent to abandon or to alter the community property agreement at any time during which Mary retained an interest in the Longview property, namely before her death in May 2001.[7]

We hold, therefore, that the trial court did not err in granting summary judgment and in quieting title in the Longview property in favor of Bailey's guardian, Davolt. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Hunt, J.

We concur:

_____
Johanson, A.C.J.

_____
Quinn-Brintnall, J.

---

[7] Even if Bailey's July 2001 act of signing the tax excise documents could be construed as an intent to abandon the community property agreement with respect to the Longview property, or somehow to consent retroactively to Mary's purported transfer of her half in 1999, this act came too late: By the time Bailey manifested such intent, Mary had died, her half of the community property had transferred to him under the community property agreement, and she no longer had community property to convey under her April 1999 quitclaim deed even if Bailey could have cured its invalidity *before* her May 2001 death.