[No. 131-40740-2.   Division Two.   March 6, 1970.]

GLEN. A. REILLY *et al.*, *Appellants*, v. BERNARD F. SAGESER *et al.*, *Respondents*.

*Monheimer, Schermer, Van Fredenberg & Smith* and *D. Van Fredenberg,* for appellants.

*Campbell, Manning, Price & Engerson* and *Frank Manning,* for respondents.

PEARSON, J.—On June 1, 1966 the plaintiffs and appellants, Glen A. Reilly and Mabel C. Reilly, acquired a vendee's interest under a real estate contract of three parcels of real property in Pierce County, Washington. This property had two homes situated thereon, one of somewhat larger size than the other.

On October 31, 1966 the plaintiffs executed a quitclaim deed to themselves and to the defendants, Bernard F. Sageser and Marguerite A. Sageser, husband and wife. The deed specified that the parties were to be "joint tenants with the right of survivorship and not as tenants in common."

On November 25, 1966 the parties signed an agreement which recited the creation of the joint tenancy by quitclaim deed. The agreement provided that the parties would pay one-half of the principal, interest, taxes, insurance, and other purchaser's obligations under the real estate contract of June 1, 1966. Concurrently with the execution of the agreement, $1,500 was paid by the defendants as consideration for the transaction.

The agreement further provided that the cost of operation and upkeep of the properties would be borne equally between the Reillys and the Sagesers. It allowed the Sagesers to occupy the small home without rental, and the Reillys were permitted to occupy the larger home without rental. Each was to provide for his own property improvements and his own costs of living.

The agreement contains two provisions which are pertinent to this appeal. Paragraph 8 provided: "That if one side defaults in the obligations set forth in this agreement causing the other party to spend money for which such party is not obligated, such defaulted obligation shall be immediately due upon demand."

It appears that at the time the agreement was signed, the parties believed that an omission had occurred. Consequently, after the signature lines, and in the handwriting of the attorney for the defendants Sageser, appeared the following provision:

If at any time in the future any party to this agreement desires to withdraw, or if either Mr. Reilly or Mr. Sageser should become permanently disabled or die, then the surviving interest shall arrange to purchase the entire interest of Reillys or Sagesers, as the case may be, at the actual contract investment of the withdrawing party, plus cost of permant [sic] improvements invested by such withdrawing party, and such purchase shall be evidenced by standard real estate contract (Form L 138 of Commonwealth Title Co.) payable in equal monthly installments over 10 years, or sooner, at the option of the the purchaser, payments to include interest at 6% on declining balances.

This handwritten paragraph was initialed by the parties.

In February, 1968 the plaintiffs, relying upon paragraph 8 of the agreement, commenced an action against the defendants in which the only relief sought was contribution for contract payments, taxes, and repairs to a water pump servicing the entire property. The complaint alleged that since the inception of the agreement, the defendants had paid nothing toward the expenses they had agreed to pay and had vacated the home which the defendants had agreed to occupy. There was nothing in the complaint, however, indicating that plaintiffs sought to withdraw from the agreement.

The defendants filed an answer and cross complaint, which in effect denied that any sums were due under the agreement and by way of cross complaint sought damages of $3,000 on account of the plaintiffs' refusal to permit them to occupy the smaller home, and other miscellaneous items of damages.

It was also alleged in the cross complaint that the plaintiffs had consented to relieve the defendants from the contract payments, since they were occupying the smaller house and inasmuch as they had rented out the larger home. The defendants asked that the complaint be dismissed, that they be given damages, and that the property be partitioned.

The trial court entered findings of fact that the plaintiffs were entitled to contribution in the sum of $605.48 for contract payments, insurance, taxes, pump repairs, and propane gas for heating the smaller home. This finding was supported by substantial evidence. The trial court further found that the defendants had not proved any damages with reference to the cross complaint and dismissed the same. Our review of the record convinces us that the trial court was correct in its oral ruling on this issue when it stated: "Well, frankly, there is a lack of proof of the damage, but even if it is established there was some damage, there is no proof that any of it was due to anything that the Plaintiff did." (Statement of facts 117).

The court further found that the parties "have been un-

able to agree as to the use and maintenance of the property and their respective responsibilities therefor . . .". Because of the disagreements between the parties, the court concluded that the property should be partitioned as defendants claimed. Accordingly, the court effected a division of the real estate, apportioning the contract payment and taxes between the parties.

The plaintiffs' appeal contended that the trial court erred in refusing to give effect to the agreement of the parties and by directing a partition of the real property. The plaintiffs argue that the trial court was obliged, because of the agreement between the parties, to treat the cross complaint of the defendants as a "desire to withdraw" from the agreement and, consequently, to permit the plaintiffs to purchase the entire interest of defendants for the actual contract investment, plus cost of improvements, if any.

The issue involved in this case is whether or not the agreement altered the property interests created by the quitclaim deed to the extent that partition was not available as a remedy to the defendants. We must also ascertain whether or not the trial court's findings support the remedy of partition.

There is no doubt that the quitclaim deed created a joint tenancy between the parties as authorized by statute, since it created a right of "survivorship and severability as at common law." (*See* RCW 64.28.010). However, the agreement entered into by the parties on November 25, 1966, and in particular the handwritten paragraph, destroyed the right of survivorship by providing that in the event of death, the survivor could purchase the deceased party's interest for the contract investment. Such an agreement, inconsistent with the common law survivorship under a joint tenancy, terminates such a tenancy. *Teutenberg v. Schiller*, 138 Cal. App. 2d 18, 291 P.2d 53 (1955).

A joint tenancy may be converted into a tenancy in common by agreement or by the failure of an attempt to create a joint tenancy. 4 G. Thompson, Real Property

§ 1795, at 123 (1961). This is also the result under RCW 64.28.020, which provides:

> Every interest created in favor of two or more persons in their own right is an interest in common, unless acquired by them in partnership, for partnership purposes, or unless declared in its creation to be a joint tenancy, as provided in RCW 64.28.010, or unless acquired as community property or unless acquired by executors or trustees.

There was a unity of possession in the parties. They were entitled to equal use and possession of the property, subject only to the provision concerning the occupancy of the two houses on the property. *See* 4 G. Thompson, Real Property § 1793 (1961).

Tenants in common are by RCW 7.52.010 granted the following right to partition:

> When several persons hold and are in possession of real property as tenants in common, in which one or more of them have an estate of inheritance, or for life or years, an action may be maintained by one or more of such persons, for a partition thereof, according to the respective rights of the persons interested therein, and for sale of such property, or a part of it, if it appear that a partition cannot be made without great prejudice to the owners.

In an early case, the Supreme Court held that the right of partition under this statute is absolute, in the absence of an agreement to hold the property in such a tenancy for a definite and fixed time. *Hamilton v. Johnson,* 137 Wash. 92, 241 P. 672 (1925).

At common law, cotenants were permitted by agreement to waive the right to partition, which was a normal incidence of a tenancy in common. *Rowland v. Clark,* 91 Cal. App. 2d 880, 206 P.2d 59 (1949); *Rosenberg v. Rosenberg,* 413 Ill. 343, 108 N.E.2d 766 (1952).

We believe that the Supreme Court recently modified *Hamilton* and inferentially adopted the common law rule permitting cotenants to waive the right to partition by agreement. *See Carter v. Weowna Beach Com. Corp.,* 71 Wn.2d 498, 429 P.2d 201 (1967), which holds that the rem-

edy of partition by sale is not available where a cotenant, by his own acts, is estopped or has waived his right by express or implied agreement. At page 502 the Supreme Court stated:

> The plaintiffs in the instant case purchased their property with full knowledge of the rights and privileges of the other purchasers. They may not now claim the absolute right to sell the property in a manner destructive of these rights and in violation of their own agreement and the restrictions imposed on the estate by the original grantor through whom they claim.

We now come to the crucial question presented by this appeal. To what extent was the right of partition waived by the cotenants by the handwritten paragraph of their agreement?

Partition is obviously inconsistent with the right of a remaining or surviving tenant to purchase at the contract investment the interest of his withdrawing, disabled or deceased cotenant,[1] for if this right could be defeated by an action for partition, then it is without purpose or meaning.

It is therefore our conclusion that the result of the deed and agreement between the parties was the creation of a tenancy in common in which neither could, unilaterally, ask for a partition, nor could one of them convey his interest in the realty to a stranger. To this extent, the right of partition was waived by the agreement.

It is our opinion that the purchase agreement precludes a unilateral partition suit:

(1) Unless the agreement is mutually rescinded, in which case the tenancy in common would be without any contract restrictions, or

(2) Unless both parties evidence a desire to withdraw from the tenancy, either expressly or by their conduct, in which events the contract is silent, or

(3) Unless the wrongful conduct of one party, in substantial breach of the agreement, seeks to force a withdrawal by the other from the tenancy in order to gain

---

[1] Which is in effect an option to purchase under those circumstances.

the financial advantage of the purchase agreement. Such a repudiation of the contract should give the other a right to partition.

We believe the trial court would have been justified in allowing partition of the property under any of the above-mentioned circumstances.

■ This brings us to the question of whether or not the trial court's findings support the remedy of partition sought by the defendant. We are mindful of the rule that where conclusions of law are not supported by findings, the findings control. *Mell v. Winslow,* 49 Wn.2d 738, 306 P.2d 751 (1957).

In support of the partition, the court found that "the parties have been unable to agree as to the use and maintenance of the property and their respective responsibilities therefor . . .". This finding is insufficient to support a partition under any of the circumstances set forth above. It does not delineate either a mutual rescission, a mutual desire to withdraw, or wrongful conduct on plaintiffs' part.

The trial court's other findings established that plaintiffs' conduct had not caused any damage to the defendants, while defendants had breached paragraph 8 of the agreement.

The trial court did not find, and we cannot say as a matter of law, that the conduct of both parties demonstrated a desire to withdraw from the tenancy. The problem is compounded somewhat by the posture both parties evidenced by the actions and cross actions they filed. Plaintiffs, on the one hand, in their complaint, sought enforcement of the agreement by seeking contribution for contract payments and other expenses. The defendants, on the other hand, sought, in effect, to terminate the tenancy by seeking a complete partition. *See* 64 A.L.R.2d § 26 at 954 (1959).

We think the findings made do not support a partition at defendants' request, but are more consistent with either a unilateral request for withdrawal by the defendants, dictating the application of the purchase agreement, or a partition if plaintiffs so request. On the other hand, we do not

believe the findings (that the parties cannot agree as to the use and maintenance of the property) would be sufficient to support the relief which plaintiff requested on appeal,[2] namely, that the defendants should be forced to sell their interest at the contract investment amount. Had the trial court found that the differences were caused by the unilateral fault of the defendants and that their breach of the agreement was substantial, then plaintiffs' position would be well taken. Likewise, we do not think as a matter of law that defendants' cross complaint for partition establishes their "desire to withdraw" from the tenancy, although it is a persuasive factor which may lead the trial court to that finding.

We do believe that the findings of the trial court and judgment in favor of the plaintiffs for contribution are supported by substantial evidence and should be affirmed. Likewise, the court's finding against the defendants' cross complaint and the dismissal thereof should be affirmed.

Since the finding made in support of partition is ambiguous in light of our ruling and insufficient to support a partition, it is our view that the case should be remanded, with directions to clarify or amplify such finding, if the trial court desires. *Garratt v. Dailey,* 46 Wn.2d 197, 279 P.2d 1091 (1955); *Brear v. State Highway Comm'n,* 63 Wn.2d 815, 389 P.2d 276 (1964).

Accordingly, the judgment, and all parts thereof pertaining to a partition of the property, is reversed, and the trial court is directed to dismiss the defendants' action for a partition, unless the court finds that the conduct of both parties prior to the action manifested an intention of their desire to withdraw from the tenancy, in which case a partition would be warranted. If the court does not so find, then the court should make a determination as to whether or not the defendants' conduct prior to the action, together with their suit to partition, manifested a desire to withdraw

---

[2]Plaintiff urged on appeal that the court's findings, coupled with the relief asked for by the defendant, compelled the conclusion that defendant "desired to withdraw" from the agreement.

from the agreement. If such a finding is made, then the court should ascertain the amount of the defendants' contract investment, plus improvements, if any, and apply the purchase agreement as though defendants are the withdrawing party.

In the event the court wishes to adhere to the findings entered, the judgment is affirmed, except as to the granting of a partition, which part of the judgment is reversed, with directions to dismiss the cross complaint for partition.

ARMSTRONG, C. J., and PETRIE, J., concur.