[No. 44195. En Banc. December 16, 1976.]

*In the Matter of the Estate of* VICTOR OLSON.
W. J. RENN, *as Executor,* ET AL, *Appellants,* v. F. MORRIS
LAMBORN, *as Executor, Respondent.*

*Fristoe, Taylor & Schultz, Ltd., P.S.,* and *E. Robert Fristoe,*
for appellants.

*Ernest L. Meyer,* for respondent.

HUNTER, J.—This is an appeal from a superior court judgment declaring a certain promissory note to be property held in joint tenancy with right of survivorship rather than community property. The precise issue presented concerns the interpretation and application of RCW 64.28.

Victor Olson and Georgie Ethel Olson were married on August 12, 1926. In 1967 a loan of $55,000 consisting of funds of the marital community was made to Dorothy W. Linn. A promissory note dated June 5, 1967, and an accompanying real estate mortgage evidenced this obligation. The note is

payable to the order of "Victor Olson or Ethel P. Olson as joint tenants with rights of survivorship" and the real estate mortgage securing it names the Olsons as mortgagees in the same language.

Victor Olson died on November 4, 1973. At the time of his death the balance remaining on the loan was $31,528.11. In his last will and testament executed on February 17, 1972, Victor Olson in paragraph four bequeathed to Dorothy W. Linn the remaining balance on the loan.[1]

Georgie Ethel Olson was aware of the loan and after the death of her husband, the note and mortgage were taken from the safety deposit box in which they had been placed following their execution. At this time, her attorney in connection with the administration of her husband's estate called her attention to the form and language of the note. Georgie Ethel Olson then informed Dorothy W. Linn on January 22, 1974, that she claimed the full balance due on the note by virtue of her survivorship.

Georgie Ethel Olson died on February 15, 1974. Respondent F. Morris Lamborn is the executor of her estate. On June 21, 1974, the executors of Victor Olson's estate, W. J. Renn, Al T. Olson, and E. Robert Fristoe, filed a petition in the probate proceedings of that estate for a declaratory ruling that the obligation evidenced by the promissory note is an asset of the Victor Olson estate. Following a trial based on stipulated facts, the trial court concluded that the note and mortgage were held in joint tenancy with right of survivorship. The court therefore found that upon the death of Victor Olson, the obligation represented by the note became the sole and separate property of Georgie Ethel Olson and was not subject to disposition under the fourth paragraph of Victor Olson's will. The executors of Victor Olson's estate appeal from this judgment.

---

[1]Paragraph four of Victor Olson's will provided:

"FOURTH: I hereby will and bequeath to my friend, Dorothy W. Lind [sic] who presently resides in Olympia, Washington, the remaining balance, if any, owing by her to me at the time of my death, which is evidenced by a Promissory Note secured by a real estate mortgage covering a duplex in which I am presently residing."

We reverse the trial court because we agree with appellants' argument that the form of the note and mortgage is not sufficient to meet the statutory requirements for a joint tenancy contained in RCW 64.28. In light of this disposition of the case, we have not considered the other arguments raised by appellants.

Until the passage of Initiative 208 in 1960, the form of joint ownership of property known as joint tenancy with right of survivorship was not recognized in this state.[2] In that year the people voted to end the prohibition against joint ownership with right of survivorship and to establish the "form of co-ownership of property, real and personal, known as joint tenancy [which] shall have the incidents of survivorship and severability as at common law." Laws of 1961, ch. 2, § 1, p. 26. This legislation further provided as follows:

> Joint tenancy may be created by written agreement, written transfer, deed, will or other instrument of conveyance, when expressly declared therein to be a joint tenancy, or when granted or devised to executors or trustees as joint tenants:   .   .   .

Laws of 1961, ch. 2, § 1, p. 26. The provisions of Initiative 208 were codified as RCW 64.28.010-.030.

In 1963 the legislature amended RCW 64.28.010 to state more explicitly the requirements for the creation of a joint tenancy. RCW 64.28.010 was changed to read as follows:

> Joint tenancy shall be created only by written instrument, which instrument shall expressly declare the interest created to be a joint tenancy. It may be created by a single agreement, transfer, deed, will, or other

---

[2]Even before Washington became a state, the legislature had eliminated the right of survivorship from the law pertaining to joint ownership of property.

"That if partition be not made between joint tenants, the parts of those who die first shall not accrue to the survivors, but descend, or pass by devise, and shall be subject to debts and other legal charges, or transmissable to executors or administrators, and be considered, to every intent and purpose, in the same view as if such deceased joint-tenants had been tenants in common, *provided,* that community property shall not be affected by this act." Laws of 1885, § 1, p. 165; *as amended,* Laws of 1953, ch. 270, §§ 1, 2, pp. 717-18.

instrument of conveyance, or by agreement, transfer, deed or other instrument from a sole owner to himself and others, or from tenants in common or joint tenants to themselves or some of them, or to themselves or any of them and others, or from husband and wife, when holding title as community property or otherwise, to themselves or to themselves and others, or to one of them and to another or others, or when granted or devised to executors or trustees as joint tenants  .  .  .

Laws of 1963, 1st Ex. Sess., ch. 16, § 1, p. 1387.

■ In interpreting statutory language, it is our goal to give effect to legislative intent whether the legislation is enacted by the legislature or directly by the people. *Compare Hartman v. State Game Comm'n*, 85 Wn.2d 176, 179, 532 P.2d 614 (1975), *and Anderson v. O'Brien*, 84 Wn.2d 64, 67, 524 P.2d 390 (1974), *with Department of Revenue v. Hoppe*, 82 Wn.2d 549, 552, 512 P.2d 1094 (1973). The history behind the statutory language quoted above shows that the long disfavored joint tenancy form of joint ownership was to be permitted. But the language also demonstrates that joint tenancies are to be given effect only within specific bounds. The language unambiguously requires a joint tenancy to be created in a writing clearly and expressly stating that the interest created thereby is a joint tenancy. In addition, the language added by the legislature's amendment suggests that the interest will usually be created by the action of a "sole owner," "tenants in common or joint tenants," or "husband and wife." In general, therefore, the requirements of the statute for the creation of a joint tenancy with right of survivorship will be met if there is an express written document indicating that the owner or owners of the property involved intend to create a joint tenancy. *See also* RCW 64.28.020.

■ The promissory note and real estate mortgage in the present case do not meet these requirements and therefore they were insufficient to create a joint tenancy. The promissory note[3] was executed by Dorothy W. Linn, a third party,

---

[3]The following is the complete text of the promissory note, which is

and hers is the only signature affixed thereon. There is no indication, other than her promise "to pay to the order of Victor Olson or Ethel P. Olson as joint tenants with rights of survivorship," that the marital community of Victor and Georgie Ethel Olson intended the community property represented by the promissory note to be held in joint tenancy. Nothing in the note or the mortgage expressly declares the interest created to be a joint tenancy. A joint tenancy cannot be created within the purview of the statute in the absence of at least some clear indication by the marital community that the property subject to joint tenancy is intended by them to be held as such. *See In re Estate of Patton,* 6 Wn. App. 464, 481, 494 P.2d 238 (1972); Cross, *The Community Property Law in Washington,* 49 Wash. L. Rev. 729, 794, 817 (1974). The creation of a joint tenancy could not be accomplished by Dorothy W. Linn's unilateral act of executing the promissory note and real estate mortgage. In substance, there was no writing by the marital

---

entitled "INSTALLMENT NOTE" and dated June 5, 1967, at Olympia, Washington:

"FOR VALUE RECEIVED, I promise to pay to the order of Victor Olson or Ethel P. Olson as joint tenants with rights of survivorship, the sum of Fifty-five Thousand ($55,000.00) Dollars, with interest thereon at the rate of Seven (7) percent per annum from date hereof, payable as follows:

"The sum of Four Hundred Twenty-five ($425.00) Dollars on the 5th day of July, 1967, and the same sum on the same day of each and every month thereafter until the entire amount of principal and interest is fully paid, payments to be credited first to interest and the balance to principal.

"There is no right of acceleration of payments on this note in order to reduce the amount of interest. The maker shall have the right to pay off said note at any time by paying the total amount of principal and the total amount of interest computed to the end of the term of this note.

"If any of said installments are not so paid, the whole sum of both principal and interest shall become due and payable at once without further notice at the option of the Holders or Holder hereof.

"Each maker of this note executes the same as a Principal and not as a Surety. In the event suit shall be brought to collect any of the principal or interest of this note I promise to pay reasonable attorneys fee and costs of such action.

"/s/  Dorothy W. Linn"

community expressly declaring the interest created to be a joint tenancy. Upon the death of Victor Olson, the promissory note remained a community asset of Victor and Georgie Ethel Olson since the requirements of RCW 64.28.010 had not been met.

The judgment of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion.

STAFFORD, C.J., and ROSELLINI, HAMILTON, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.

HALE, J.* (dissenting)—The simplest declarative sentence may be so judicially interpreted that it remains neither simple nor declarative. To subject a straightforward and clearly stated piece of legislation to the labyrinthine processes of judicial analysis will quite likely create an unnecessary risk of misconstruction and probably thwart the legislative intent. So clearly stated are the initiative measure and the legislative enactment establishing joint tenancy that neither, I think, requires judicial construction. All that needs be done in this case is to apply the statute to the facts and thereupon determine the parties' rights in the premises. If that is done here, the court should affirm, and I therefore dissent.

As the court points out, its goal is "to give effect to legislative intent whether the legislation is enacted by the legislature or directly by the people." That goal, I think, will be more readily attained if the statute is not exposed to the risks of further judicial interpretation.

The statute (RCW 64.28.010) prescribes neither a form nor a formula. Its terms, however, are clear and explicit and should be read to include a transfer or conveyance of property or an interest therein from a sole owner by means of a note and mortgage to, and received by, a community of husband and wife as a joint tenancy with attendant survivorship where the interest created by that writing is, as

---

*Justice Frank Hale is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. 4, § 2A (amendment 38).

prescribed by the statute, expressly declared to be a joint tenancy. RCW 64.28.010. And a transfer or conveyance of property in writing to two named individuals "as joint tenants with rights of survivorship," must be regarded as a literal declaration that the interest created shall be a joint tenancy and thus fulfilling the requirements of the statute.

The court's opinion delineates the history of joint tenancy in this state and shows how it culminated in the two recent enactments under consideration. In pointing out, however, ostensible differences between the initiative measure and the legislature's enactment, the court overlooks the striking similarities between the two—similarities which the legislature obviously intended to preserve.

Initiative 208, as the court says, enacted by the people in 1960, Laws of 1961, ch. 2, § 1, p. 26, RCW 64.28.010-.030, reestablished in this jurisdiction the common-law co-ownership in property known as joint tenancy in the following words:

> Joint tenancy *may* be created by written agreement, written transfer, deed, will or other instrument of conveyance, when expressly declared therein to be a joint tenancy, or when granted or devised to executors or trustees as joint tenants . . .

(Italics mine.) In comparing the initiative with the statute, one should note the use of directory words: "*may* be created by written agreement, written transfer" or other instrument, and the absence of a mandatory phrase. This directory language gives rise to the possibility which the legislature sought to avoid that a joint tenancy might, under the initiative, be claimed to have come into existence by operation of law, or by an estoppel, or partly in writing and partly orally, or by a combination of facts and circumstances consummated without a writing which expressly declares the interest transferred to be a joint tenancy. As to prescribing a writing, legislative intent in the initiative may be partly ascertained from the conspicuous absence of the mandatory words so universally available in a lawyer's lexicon as *shall,* or *must be,* or *only.*

The legislature, however, left no doubt that a joint tenancy cannot be created except in writing. This is shown in the change from the directory language of the initiative to the mandatory language in the amendatory legislation enacted by the legislature, Laws of 1963, 1st Ex. Sess., ch. 16, § 1, p. 1387, RCW 64.28.010, reading:

> Joint tenancy shall be created *only* by written instrument, which instrument shall expressly declare the interest created to be a joint tenancy. It may be created by a single agreement, transfer, deed, will, or other instrument of conveyance, or by agreement, transfer, deed or other instrument from a sole owner to himself and others, or from tenants in common or joint tenants to themselves or some of them, or to themselves or any of them and others, or from husband and wife, when holding title as community property or otherwise, to themselves or to themselves and others, or to one of them and to another or others, or when granted or devised to executors or trustees as joint tenants . . .

(Italics mine.)

Thus, aside from the fact that the legislative enactment, RCW 64.28.010, spells out in detail what the initiative stated in the broadest possible terms, the differences between the two are seen to be quite superficial with one exception, *i.e.,* where the initiative says a joint tenancy *may* be created by *written* agreement, written transfer or other writing, the later statute enacted by the legislature (RCW 64.28.010) specifies that it can be created *only* by written instrument. The legislature, in this fashion, as it did over a century ago in the statute of wills, categorically sought to eliminate all hazards and uncertainties of a joint tenancy being successfully claimed to exist in the absence of a writing to prove it. The statute (RCW 64.28.010) leaving no room for interpretation makes certain what the initiative left uncertain; it eliminates the possibility of a joint tenancy coming into existence or from being successfully claimed to have come into existence either by operation of law, or the conduct of the parties short of a writing, or by an estoppel or otherwise by facts and circumstances, in the absence of a written transfer, conveyance, deed or other writing. The sine qua

non under the statute, therefore, is an express written declaration made by one or more persons having the legal power to make such a valid and enforceable writing.

Here there was not one but two writings, a note and a mortgage, each in identical language and a part of the same transfer of property. By accepting a transfer of property through these two written instruments, each of which expressly declared the interests transferred to be vested in Victor Olson or Ethel P. Olson as joint tenants with rights of survivorship, the Olsons, it should be held, acquired the property in joint tenancy. Where it is the clear and express intent of the transferor and the transferees to establish in writing a specific transfer of property in joint tenancy, what other possible construction can be placed on the writing and the transaction short of abrogating the statute? Accordingly, I think the parties to the instant transaction fully complied with the requirements of the statute (RCW 64.28.010) by a transfer of property through written instruments which expressly declared the interests created to be a joint tenancy.

As earlier noted, the legislature did not, as it frequently does, supply a model form or formula nor make mandatory any particular language or phraseology. All that is required to establish a joint tenancy under the statute is that the interest created is expressly declared to be a joint tenancy. To hold, therefore, that the words of the note and mortgage "as joint tenants with rights of survivorship" do not expressly declare the interest created to be a joint tenancy, subjects the statute to an inordinately literal interpretation, puts form above substance, and I fear defeats the purpose and intent of the legislature in enacting it.

Since the enactment of the joint tenancy initiative and the statute, one may reasonably assume that many thousands of pieces of property throughout the state have been taken into ownership in joint tenancy in much the same way that Victor and Ethel Olson acquired possession of Dorothy W. Linn's note and mortgage and the property interests transferred by these writings. The language employed in many of such transactions, one may be sure, will be the same or

similar to that utilized here, *i.e.,* naming the transferees or grantees and transferring or conveying to them as joint tenants with rights of survivorship. The court now, I think needlessly jeopardizes these innumerable joint tenancies.

I would, therefore, affirm.

DOLLIVER, J., concurs with HALE, J. Pro Tem.