[No. 44628.    En Banc.    February 9, 1978.]

JOHNIE LAMBERT, ET AL, *Respondents*, v. PEOPLES NATIONAL BANK OF WASHINGTON, *as Guardian, Appellant.*

*Parker & Johnson,* by *Arlis W. Johnson,* for appellant.
*Gladys Phillips,* for respondents.

ROSELLINI, J.—In this action, beneficiaries of a trust established in the will of August Lambert sought to recover from the guardian of his wife, an incompetent, assets which they alleged belong to the estate of the deceased. These consisted of certain bank accounts in which community funds had been deposited and series E bonds purchased with community funds, which the trial court ruled were held as joint tenants with right of survivorship, and certain mutual funds, which the court found to be community property, one–half of which was subject to distribution under the will of August Lambert.

The beneficiaries did not appeal from that portion of the judgment which awarded the bank accounts and series E bonds to the guardian of the incompetent wife, as survivor. The guardian, on the other hand, has appealed and challenges the court's conclusion that the mutual funds were community property and not property held as joint tenants.

According to the evidence, the funds were purchased by the wife with community funds, the Lamberts' only source of income being the husband's earnings. There was no evidence that she requested the issuer, either orally or in writing, to issue them to her and her husband as tenants in common or as joint tenants. Most of the certificates showed the Lamberts to be the owners "as joint tenants, with right of survivorship." The others described them as tenants in common.

These certificates had been acquired by the Lamberts over a period of years beginning in 1950 and ending in 1972, when August Lambert died. August Lambert, a Belgian immigrant, did not know how to read or write. He was employed throughout these years as a millworker. Louise Lambert, also a Belgian immigrant, had only a rudimentary education. However, she was a very good manager of

money, and through her investments brought the community's funds to a total of over $200,000 before she became incompetent, apparently as a result of senility. There was no evidence to indicate that either of these two understood the meaning of the terms "tenancy in common" or "joint tenancy." Most of the mutual fund securities were acquired before the passage of Initiative 208 in 1960, and at a time when survivorship as an incident of joint tenancy was abrogated by law.

In purchasing the mutual funds, Louise Lambert relied upon the advice of a friend, William Appel, who sold them to her.

In June 1965, William Appel took the Lamberts to a lawyer whom he had asked to prepare their wills. He told the lawyer that the Lamberts had a large amount of securities, but did not mention the form of registration. After discussion of the Lamberts' financial situation and their testamentary desires, and after advising them with respect to inheritance taxes, the lawyer prepared wills, under the terms of which each of the spouses set up a trust for the benefit of the other during his or her lifetime. Each provided for payment of the remainder of his or her estate to designated beneficiaries on the death of the surviving spouse. One of the objectives of the trust arrangements was to reduce estate taxes.

On the day that the wills were executed, the Lamberts visited at the homes of friends, where they expressed satisfaction with their wills and indicated that they understood that they had disposed of their entire estates thereby.

When August Lambert died, it was discovered that all of the Lamberts' property except for miscellaneous personal property of the value of $635 and the mutual fund stocks registered in the names of the Lamberts as tenants in common, which were sold for $16,795.10, was held by the Lamberts as joint tenants with right of survivorship. These assets, which were valued at approximately $200,000, were turned over to the appellant, as guardian of the estate of Louise Lambert. As a result, the estate of August Lambert

was insolvent, and unable to pay estate and inheritance taxes, claims of creditors, costs of administration, or special bequests.

In reaching its conclusion that the mutual fund stocks registered in the names of the Lamberts as joint tenants with right of survivorship remained community property, the Superior Court reasoned that a presumption of joint ownership arose from the fact that the securities were registered in this form, but that such presumption was conclusively rebutted when it was shown that they had been purchased with community funds. The court found this conclusion fortified by evidence that the Lamberts made their wills and disposed of their property in a manner consistent with an understanding that it was community property and inconsistent with a belief that it was held in joint tenancy with right of survivorship.

The lower court rendered its decision in this case before our decision in *In re Estate of Olson*, 87 Wn.2d 855, 557 P.2d 302 (1976) had been published. There, we held that language in a note and mortgage, given to secure a debt owed to the community, by which they were made payable to husband and wife as joint tenants with right of survivorship, did not convert the obligation from community property to joint property, being insufficient to meet the statutory requirements for the creation of a joint tenancy.

RCW 64.28.010 provides in part:

> Joint tenancy shall be created only by written instrument, which instrument shall expressly declare the interest created to be a joint tenancy. It may be created by a single agreement, transfer, deed, will, or other instrument of conveyance, or by agreement, transfer, deed or other instrument from a sole owner to himself and others, or from tenants in common or joint tenants to themselves or some of them, or to themselves or any of them and others, or from husband and wife, when holding title as community property, or otherwise, to themselves or to themselves and others, or to one of them and to another or others, or when granted or devised to executors or

trustees as joint tenants . . . [Laws of 1963, 1st Ex. Sess., ch. 16, § 1, p. 1387.]

This statute, we held, requires a written document indicating that the owner or owners of the property involved intend to create a joint tenancy. We said:

> A joint tenancy cannot be created within the purview of the statute in the absence of at least some clear indication *by the marital community* that the property subject to joint tenancy is intended by them to be held as such. The creation of a joint tenancy could not be accomplished by [the debtor's] unilateral act of executing the promissory note and real estate mortgage. In substance, there was no writing by the marital community expressly declaring the interest created to be a joint tenancy.

(Citations omitted. Italics ours.) *In re Estate of Olson, supra* at 859–60.

Here, as in that case, the only expression of an intent to create a joint tenancy with right of survivorship came from a third party, in this instance the issuer of the mutual fund certificates. There is no writing or any other evidence manifesting an intention on the part of the Lamberts to convert their property from community property to joint property, thus changing the incidents of ownership. It would seem likely the words "as joint tenants, with right of survivorship" were inserted by the issuer for its own protection. There is nothing to indicate that they were put there to memorialize an agreement between the spouses as to how their property should be held. Certainly there is in the record no evidence that the Lamberts ever agreed between themselves that these securities should be held in joint tenancy and not as community property, much less that they reduced such an agreement to writing.

Under the statute, as interpreted and applied in *In re Estate of Olson, supra,* the Superior Court rendered the only judgment with respect to the mutual fund securities that the evidence would support. Therefore, we need not examine further assignments of error directed to the admission of testimony relating to the Lamberts' intent with respect to their wills and the relevance of the wills

themselves. Such evidence, while it shows that the Lamberts believed that they each had the right to dispose of one–half of all of their property by will and is thus consistent with our holding, is not necessary to sustain it. Consequently, if there was any error in admitting the evidence, it was harmless.

The judgment is affirmed.

WRIGHT, C.J., and HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.