[No. 6926–8–I.   Division One.   January 28, 1980.]

IVAN E. MERRICK, *as Administrator,* ET AL, *Respondents,* v. THEODORE A. L. PETERSON, ET AL, *Appellants.*

*Martin D. Fox* and *Abbey & Fox*, for appellants.

*Larry C. Leonardson, Dodel, Skone, Leonardson & Perkins*, and *Michael L. Olver*, for respondents.

DORE, J.—This is an action by plaintiff assignees to enforce the provisions of a promissory note.

ISSUES

1. Whether plaintiffs, owners of a promissory note, are holders in due course.

2. Whether plaintiffs' claim is barred due to violations of security laws.

3. Did the trial court err when it denied defendants' jury demand?

4. Did the trial court err when it limited interest to 8 percent per annum?

5. Whether attorneys' fees allowed by the trial court are reasonable.

6. Whether plaintiff Walker was the sole owner of the promissory note involved herein.

FACTS

Cochise College Park, Inc., was a real estate development company which bought and sold lots in Arizona. Cochise provided its own financing and took notes and mortgages from purchasers, which they later discounted. The Cochise operation lasted from 1969 to 1972, at which time the Securities and Exchange Commission shut it down for fraud and failure to register interstate securities.

Between June 1969 and April 1971, the defendants visited and purchased four parcels of property in Arizona from Cochise. The promissory note executed on the fourth purchase is the subject of this lawsuit. In that note, defendants promised to pay Cochise $7,417.20 in 84 monthly installments of $88.30 on the fifteenth day of every month, beginning June 15, 1971.

On April 29, 1971, Cochise assigned the defendants' note to plaintiffs Mary Marsh and Muryel Walker as joint tenants with the right of survivorship. Defendants made regular payments through September 1972. The defendants ceased making payments when they learned the creditors of Cochise had filed an involuntary bankruptcy proceeding.

In 1976, a guardian who had been appointed for Mary Marsh in 1971 instituted suit against Walker for exerting undue influence on Marsh to obtain money to purchase the

note. At the same time the estate brought suit against defendants to collect on the defaulted promissory note. To facilitate collection, the guardian dismissed the claim against Walker and the parties signed a stipulation agreeing to split the Peterson judgment proceeds equally.

On May 25, 1976, 2 months after the stipulation was executed, Mary Marsh passed away. Ivan Merrick was appointed special administrator of the estate, who then hired lawyer Olver as his counsel. When the case was called to trial, Walker was not a named party. The trial court ruled that she had an interest in the suit and should be made a party plaintiff. Walker subsequently filed an appearance pro se. Throughout the trial, Olver represented both plaintiffs without objection from Walker.

The trial court held that plaintiffs were entitled to a money judgment of $6,092.70 plus interest at 8 percent per annum, together with attorney's fees of $300. The court also entered findings of fact, finding that plaintiffs were holders in due course of the promissory note. On appeal, defendants contend the trial court erred (1) when it found that the plaintiffs were holders in due course, (2) when it denied their jury demand, and (3) when it failed to find that plaintiffs violated certain security laws.

Walker cross–appeals against the estate claiming sole ownership of the promissory note.

Merrick appeals the trial court judgment that $300 constitutes a reasonable attorney's fee. Both plaintiffs assign error to the trial court's ruling that 8 percent is the proper interest rate upon default.

## DECISION

ISSUE 1: Substantial evidence supports the trial court's findings that the plaintiffs are holders in due course.

In finding of fact No. 5, the trial court found that plaintiffs were holders in due course of the promissory note. The finding states:

5. Plaintiffs are holders in due course of said note. Defendants failed to prove that plaintiff Walker had notice of any person or that said plaintiff was guilty of fraud in the assignment transaction.

■■ The question of whether one is a holder in due course is a question of fact to be determined by the trier of fact. *Vernon v. Yanks,* 303 So. 2d 375 (Fla. Dist. Ct. App. 1974). The subject case was tried to the court. The issue here is whether there is substantial evidence to support the above findings of the trial court. We will not substitute our judgment for that of the trial court even though the factual dispute could be resolved differently. *Jarrard v. Seifert,* 22 Wn. App. 476, 591 P.2d 809 (1979).

RCW 62A.3–302 states in part:

(1) A holder in due course is a holder who takes the instrument
   (a) for value; and
   (b) in good faith; and
   (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

Defendants initially argue that there is no substantial evidence in the record to indicate Walker acted in good faith. Defendants contend that the fact that plaintiffs purchased the note at a $2,500 discount, coupled with a close relationship of Walker with the fraudulent seller of the notes, proves she did not act in good faith. The record does not support such allegations.

■ Good faith is defined as "honesty in fact." RCW 62A.1–201(19). The existence of good faith is determined by a subjective test and there is no reasonable care standard included in the faith requirement. *Von Gohren v. Pacific Nat'l Bank,* 8 Wn. App. 245, 505 P.2d 467 (1973).

In the subject case there is substantial evidence in the record indicating that the plaintiff was not closely associated with the known fraudulent seller of lots and promissory notes. Testimony also indicates that Walker did not participate in the sale of the lots to the defendants. We

conclude that there is substantial evidence in the record to support a finding of good faith.

Defendants further contend that since Walker knew of Cochise's fraudulent scheme, she had knowledge of fraud that was a defense to the promissory note. However, there is substantial evidence indicating that Walker was not so closely connected with Cochise that she would necessarily have known of fraudulent practices. Contrary to defendants' assertions, she sold no notes or lots for Cochise.

Defendants finally argue that Walker knew the Peterson transaction was voidable. A purchaser has notice of a claim or defense if he knows an obligation is voidable. RCW 62A.3–304. Defendants assert that Walker knew that defendants had 6 months to inspect the property and the right to rescind the contract. The evidence does not support such a conclusion.

First, the record shows that Walker did not know of the rescission option. Second, the 6–month rescission period is only applicable where the purchaser does not initially inspect the property and chooses to revoke within 6 months of the purchase. In the subject case, defendants fully inspected the property and chose not to rescind.

We conclude that there is substantial evidence in the record to support the findings of the trial court that the plaintiffs were holders in due course and we will not substitute our judgment for that of the trial court even though we might have resolved this issue differently in the first instance. *Jarrard v. Seifert, supra.*

ISSUE 2: Plaintiffs' claim is not barred by violations of Washington security laws.

As a defense and basis for counterclaim, defendants argued that Walker violated RCW 21.20.140 which makes in unlawful to sell unregistered securities.

The trial court rejected the claim and stated in its oral opinion:

As far as the security laws are concerned, if there is a cause of action against Mrs. Walker, I'm sure the Attorney General's office would certainly be interested if counsel can show that she violated that statute. . . . I don't think it has been proven in this case.

RCW 21.20.140[1] makes it unlawful to sell unregistered securities. The sale of land outside Washington, not sold through a broker, is a security pursuant to RCW 21.20.005(12):[2] Further, RCW 21.20.430(3)[3] provides that one who "materially aids" in the sale shall be liable to the same extent as the seller or buyer. Defendants argue that plaintiff Walker materially aided in the sale of Arizona land to the Petersons.

In the subject case, there is no credible evidence in the record indicating that Walker aided in the Peterson sale. The trial court correctly ruled that there was insufficient proof of violations of Washington security laws.

ISSUE 3: This court has no jurisdiction to determine whether the trial court erred when it denied defendants' jury demand.

The defendants initially demanded a trial by jury but waived that right on the opening day of trial. Thereafter, Walker was made a party plaintiff. The defendants again demanded a trial by jury on the ground that new issues arose concerning violations of security laws. The motion

---

[1]RCW 21.20.140 states: "It is unlawful for any person to offer or sell any security in this state, except securities exempt under RCW 21.20.310 or when sold in transactions exempt under RCW 21.20.320, unless such security is registered by coordination or qualification under this chapter."

[2]RCW 21.20.005(12) states: "'Security' means any . . . sale of or indenture, bond or contract for the conveyance of land or any interest therein where such land is situated outside of the state of Washington and such sale or its offering is not conducted by a real estate broker licensed by the state of Washington. . . ."

[3]RCW 21.20.430(3) provides: "Every person . . . who materially aids in the transaction is also liable jointly and severally with and to the same extent as the seller or buyer, unless such person sustains the burden of proof that he or she did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. . . ."

judge denied that request and ruled that the jury had been waived. This decision was not appealed nor renewed during the trial. There is no basis now upon which this court can review this matter.

ISSUE 4: The trial court erred when it limited interest after default to 8 percent.

The promissory note executed by the defendants in April 1971 stated in part:

If any installment of this note is not paid in full at the time and place specified, the aggregate amount of all unpaid monthly installments shall immediately become due and payable at the election of the holder of this note, and the sum so matured *shall thereafter bear interest at the maximum rate permitted by law.*

(Italics ours.)

The trial court entered a judgment against the defendants in the amount of $6,092.70, which represents the amount of principal due and owing to plaintiffs. The order also provides for interest at the rate of 8 percent from the date of judgment. This is the correct post–judgment interest rate according to RCW 4.56.110.[4]

██ However, the trial court erred when it entered finding of fact No. 6 which states:

6. The note provides for interest after default "at the maximum rate permitted by law." The court interprets this rate to be 8% per annum.

In April 1971, the maximum interest rate permitted by law was 12 percent. RCW 19.52.020.[5]

---

[4]RCW 4.56.110 states in part: "Interest on judgments shall accrue as follows:

"(1) Judgments founded on written contracts, providing for the payment of interest until paid at a specified rate, shall bear interest at the rate specified in such contracts, not in any case, however, to exceed ten percent per annum: *Provided,* That said interest rate is set forth in the judgment.

"(2) Except as provided under subsection (1) of this. section, judgments shall bear interest at the rate of eight percent per annum from the date of entry thereof: . . ."

[5]RCW 19.52.020 provides: "Any rate of interest not exceeding twelve percent per annum agreed to in writing by the parties to the contract shall be legal, and

Therefore, the plaintiffs are entitled to a judgment against the Petersons in the amount of $6,092,70, which sum represents the amount of principal due and owing on the promissory note. This sum shall bear interest at the rate of 12 percent from the time of default (September 1972) until the date of judgment (August 15, 1978). Added to this amount shall be interest at the rate of 8 percent per annum from the date of judgment.

ISSUE 5: The trial court failed to allow reasonable attorney's fees.

The promissory note executed in April 1971 provides for reasonable attorney's fees in the event of default. The note states in part:

> In case payment shall not be made at maturity, I or We, promise to pay any and all costs of collection, including reasonable attorneys' fees (not less than 10% in the event of suit), whether suit be brought or not, in addition to the sums due hereunder.

In finding of fact No. 7,[6] the trial court found $300 to be a reasonable fee. Plaintiff Merrick argues such fee is totally inadequate. We agree.

■ It is well settled that the trial court has the discretionary power to limit attorney fees to a reasonable amount. *Lawrence v. Northwest Cas. Co.*, 50 Wn.2d 282, 311 P.2d 670 (1957). The court should consider the amount of time expended, the difficulty of the questions involved, and the skill required. *Beeson v. Atlantic–Richfield Co.*, 88 Wn.2d 499, 563 P.2d 822 (1977).

In the subject case, the attorney fee award had no relation to the above factors. Counsel for the estate conducted

---

no person shall directly or indirectly take or receive in money, goods or things in action, or in any other way, any greater interest, sum or value for the loan or forbearance of any money, goods or things in action than twelve percent per annum: . . ."

[6]"7. The note provides for the payment of reasonable attorney fees, in addition to all sums due hereunder. Because of the special nature of the case and the blindness of defendant, Theodore A. L. Peterson, the sum of $300.00 is a reasonable fee to be allowed plaintiffs on account of their attorney fees incurred herein."

a 4–day trial, appeared 13 times on the motion calendar, took numerous depositions, and expended many hours of research. Three hundred dollars is not a reasonable fee for such services. We remand this issue to the trial court to award a reasonable attorney fee, utilizing the factors outlined in *Beeson v. Atlantic–Richfield Co., supra.*

ISSUE 6: The trial court did not err in holding that the estate of Mary Marsh and Walker hold the promissory note as tenants in common.

Finding of fact No. 4 states that the plaintiffs hold the promissory note as tenants in common, to wit:

4. By stipulation made by Paul D. Marsh, Guardian of the Person and Estate of Mary A. Marsh (G2522) and Muryel Sullins Walker, filed herein as folio 31 and approved by the court, the Estate of Mary A. Marsh and Muryel Sullins Walker hold the note as tenants in common.

The ownership of the promissory note was not a contested issue at trial. However, in a motion for reconsideration plaintiff Walker requested the court delete the above finding of fact. Walker argued that the stipulation, which provides for an equal split of any money judgment against the Petersons, did not convert the joint tenancy into a tenancy in common. Because Walker survived the decedent, she seeks 100 percent of the judgment.

The record in the present case reveals that Walker and the decedent purchased the promissory note which was endorsed in joint tenancy, with the right of survivorship. In 1976, a guardian, appointed for Mary Marsh, instituted suit against Walker claiming Walker had exerted undue influence upon Marsh to obtain the funds to purchase the note. At the same time, the estate sued the Petersons to collect upon the note. To facilitate collection, the guardian dismissed the claim against Walker and a commissioner signed an "Order Approving Settlement with Muryel Sullins Walker" which states in part:

That any funds which may be realized from any judgment entered against Theodore Peterson and/or his wife,

in that certain case pending in the above entitled court, wherein the Guardian is the plaintiff and Theodore Peterson, et al. are the defendants, being cause No. 795 776 and/or 797 778, shall upon receipt thereof, be promptly divided equally between said guardian for the guardianship estate and Muryel Sullins Walker.

The above order was approved by Walker. Walker also signed a "Stipulation of Guardian and Muryel Sullins Walker" which was based upon the language of the court order.

It is well settled that a joint tenancy with survivorship is created when the four unities of time, title, interest and possession exist. *Holohan v. Melville,* 41 Wn.2d 380, 249 P.2d 777 (1952). In the subject case, it is undisputed that the parties originally held the note as joint tenants.

However, any agreement subsequently executed which is inconsistent with the joint tenancy converts it into a tenancy in common. *Reilly v. Sageser,* 2 Wn. App. 6, 467 P.2d 358 (1970).

In the present case, the stipulation did, in fact, change an essential element of a joint tenancy. In a true joint tenancy, each of the tenants has an undivided interest in the whole, and not the whole of an undivided interest. *In re Estate of Peterson,* 182 Wash. 29, 45 P.2d 45 (1935). The stipulation involved in the case at bar gave each party a divided interest in the whole. Each party was entitled to 50 percent of the Peterson judgment proceeds. Therefore, the unity of interest requirement was no longer satisfied and the joint tenancy was converted into a tenancy in common.

We find all other assignments of error to be without merit and deny them.

## Conclusion

1. We affirm the judgment in favor of plaintiffs, against defendants, but modify it to provide for interest at the rate of 12 percent per annum on the balance owing, up to the date of judgment and 8 percent thereafter.

2. The issue of attorney fees shall be remanded to the trial court for the purpose of awarding plaintiffs' attorney's fees, in reasonable amounts, for legal services rendered in the trial court, and in addition, reasonable fees for their legal services rendered on appeal before this court.

JAMES, A.C.J., concurs.
ANDERSEN, J., concurs in the result.

Reconsideration denied February 28, 1980.