[No. 49296–4.   En Banc.   October 13, 1983.]

RICHARD D. LYON, *Respondent,* v. MARGARET A. LYON, *Appellant.*

*Esther Jane Johnson (Robert W. Goldsmith,* of counsel), for appellant.

*C. Thomas Tuohy* and *Tuohy & Hammer,* for respondent.

UTTER, J.—This is an action to quiet title to a parcel of property in Snohomish County. Plaintiff Richard Lyon claims that the property was conveyed as a gift to him and his brother Edward in joint tenancy and that Edward's recent death vested the whole in Richard. Defendant Margaret Lyon, Edward's wife, claims that Edward's separate interest in the property was, immediately upon vesting, conveyed to the community under the terms of an existing community property agreement between Margaret and Edward. This, Margaret argues, severed the joint tenancy.[1] We hold that there was no conveyance to the community

---

[1]Margaret also argues in the alternative that a severance resulted when Richard later executed a mortgage on his interest in the property. Because of our resolution of her other claim, we need not address this second issue.

but that the conveyance to Edward and Richard while a community property agreement existed between Edward and Margaret resulted in an unsevered joint tenancy between the community and Richard. Nonetheless, we hold that, upon Edward's death, Margaret's rights in the community property directly and under the community property agreement prevail over Richard's joint tenancy right of survivorship. She and Richard now hold as tenants in common, each holding an undivided one–half interest in the whole.

Richard and Edward acquired the property as a gift from their father on October 25, 1968, by a quitclaim deed which expressly provided that the brothers take as joint tenants. At the time, a community property agreement between Edward and Margaret was also in force. That agreement was a typical "three–pronged" community property agreement (*see* Washington State Bar Ass'n, *Community Property Deskbook* § 18.7 (1977)), providing (1) that all property then owned by either spouse was converted to community property; (2) that all property later acquired would be community property; and (3) that upon death of one spouse all community property would vest in the survivor.

Edward died on January 21, 1980, and in 1981 Richard filed this action. Both parties moved for summary judgment on the grounds noted above. The trial court granted summary judgment for Richard, and Margaret now appeals.

Joint tenancy is one of the two major forms of co–ownership of property, the other being tenancy in common. 4A R. Powell, *Real Property* 672, 677 (1982). The major distinguishing characteristic of a joint tenancy is the right of survivorship, by which a surviving joint tenant takes sole title to the whole upon death of the others. *In re Estate of Oney*, 31 Wn. App. 325, 328, 641 P.2d 725 (1982). A conveyance by one joint tenant of his or her interest severs the joint tenancy, *i.e.*, transforms it into a tenancy in common, thereby extinguishing the right of survivorship. 4A R. Powell, at 672–73.

Each party recognizes these general principles; however, they disagree as to their application in the present case. Specifically, they disagree as to whether the community property agreement between Edward and Margaret was a conveyance sufficient to destroy or defeat Richard's right of survivorship. To analyze this question, we focus on two key events in the property's history—the conveyance of the property in joint tenancy to Edward and Richard and the death of Edward.

First, the ownership of the property following its conveyance must be characterized. Ordinarily, property received as a gift remains the separate property of the donee spouse. RCW 26.16.010–.020. In the present case, however, the community property agreement converted all separate property into community property and Edward's joint tenancy interest therefore became community in character upon receipt.

The parties appear to assume that any such character arose after some infinitesimal initial existence as separate property and focus on the validity of the "conveyance" to the community as against Richard. The parties err in this underlying assumption, however. A community property agreement as applied to after acquired property does not instantaneously convey initially separate property to the community but merely labels all after acquired property community immediately upon receipt. *See* Washington State Bar Ass'n, *Community Property Deskbook* § 7.5, at 7–8 (1977) ("the community property agreement operates to preclude classification of any subsequent acquisition as separate property"); Cross, *The Community Property Law in Washington,* 49 Wash. L. Rev. 729, 807 (1974) (result of community property agreement "is that neither spouse will have any separate property while both live"); Brachtenbach, *Community Property Agreements—Many Questions, Few Answers,* 37 Wash. L. Rev. 469, 479 (1962). The property never has any separate character and thus there is no implicit conveyance to the community.

In the present case, therefore, there was no convey-

ance of the joint tenancy to the community. Instead, the joint tenancy interest conveyed to Edward became community property immediately and the joint tenancy was created not between Richard and Edward individually but between Richard and the community of Edward and Margaret. That such a joint tenancy can exist was recognized in *In re Estate of Webb,* 49 Wn.2d 6, 12–13, 297 P.2d 948 (1956).

The effect of Edward's death on the joint tenancy between the community and Richard is the next question we must answer. In *Estate of Webb,* we noted, but did not decide, that "the rights of the [individual joint tenant] might have to yield to the superior rights of the surviving member of the community or the representative of the community estate". *Estate of Webb,* at 12–13. We must now analyze this question more fully.

At the very least, a surviving spouse retains at least half of a community's interest in a joint tenancy. The theory of community property in this state is that each spouse has a present, undivided half interest in each specific item of community property. *In re Estate of Patton,* 6 Wn. App. 464, 476–77, 494 P.2d 238 (1972). As we noted in *In re Estate of Coffey,* 195 Wash. 379, 382, 81 P.2d 283 (1938), "[n]o new right or interest is generated in the [surviving spouse] by the death of [the other]; his [or her] death merely affords the occasion for the termination of the [deceased spouse's] interest in the community estate." *See also* Rein, *A More Rational System for the Protection of Family Members Against Disinheritance: A Critique of Washington's Pretermitted Child Statute and Other Matters,* 15 Gonz. L. Rev. 11, 38 (1979) ("[u]pon dissolution of the marriage, whether by divorce or death, the nontitled spouse cannot be completely deprived of the accumulated wealth because he or she already owns half of it"). A surviving spouse's half share of the community interest in a joint tenancy can therefore not be extinguished by the death of the other spouse.

The deceased spouse's half share of the joint tenancy

may be extinguished by his or her death. The deceased spouse's half interest in community property is subject to testamentary disposition. RCW 11.02.070. It is thus extinguished by the joint tenancy survivorship right, just as are testamentary powers generally. *See* 53 Wash. L. Rev. 557, 565–66 (1978). Thus, the death of a spouse will generally extinguish one–half of the community interest in a joint tenancy. This extinguished interest will then divide proportionately among the new cotenants, namely the surviving spouse as an individual and the remaining joint tenants. The division of the community interest and transformation of the surviving spouse's interest from community to separate property will also work a severance, thereby making the surviving spouse a tenant in common. *Cf. Nelson v. Hotchkiss,* 601 S.W.2d 14, 21 (Mo. 1980) (joint tenancy between two couples, each holding their respective interests as tenancy by the entirety, was converted into tenancy in common by divorce of one couple).

■ We recognize an exception to this general rule, however, where there exists a community property agreement such as that in the present case. While the joint tenancy right of survivorship acts immediately upon death, a community property agreement is also effective immediately upon death. Brachtenbach, at 475. *See also Norris v. Norris,* 25 Wn. App. 290, 295, 605 P.2d 1296, *aff'd,* 95 Wn.2d 124, 622 P.2d 816 (1980). Which "instantaneous" event takes place first might muddle metaphysicians for millennia. There is a need to resolve the issue, however, and we hold that when the agreement simply conveys all community property to the surviving spouse, the agreement controls. It is the policy of law to favor community property and disfavor joint tenancies. *See, e.g., In re Estate of Olson,* 87 Wn.2d 855, 857–58, 557 P.2d 302 (1976). This policy extends to favoring full vesting of a community property interest in a surviving spouse over partial extinction in favor of the joint tenancy right of survivorship.[2] *Cf.*

---

[2] While we do not address the situation here, we do note that these policy con-

RCW 11.04.015(1)(a) (when spouse dies, surviving spouse receives all of decedent's share of net community estate).

In the present case, these principles compel a conclusion that Margaret retains both her share and Edward's share of the community interest in the property, *i.e.*, an undivided half interest in the whole. The conversion of Margaret's share into her separate property and the conveyance of Edward's share to Margaret by the community property agreement acted to sever the joint tenancy. Richard and Margaret now hold as tenants in common, each holding an undivided one–half interest in the whole.

The judgment of the trial court is reversed and the case remanded for entry of judgment in accordance with this opinion.

WILLIAMS, C.J., and ROSELLINI, STAFFORD, DORE, DIMMICK, and PEARSON, JJ., concur.

DOLLIVER, J. (concurring)—While I concur with the ultimate finding of the majority, that Richard and Margaret hold the Snohomish County property as tenants in common, I object to the circuitous and sometimes strained analysis used to achieve that result.

The gift of property to the brothers from their father failed to create a joint tenancy between the community and Richard. To create a joint tenancy under RCW 64.28.010 requires a "written instrument, which instrument shall expressly declare the interest created to be a joint tenancy." A joint tenancy of a marital community, however, cannot be formed by the unilateral declaration of the transferor. *In re Estate of Olson,* 87 Wn.2d 855, 859, 557 P.2d 302 (1976). Rather, there must be "at least some clear indication by the marital community that the property subject to joint tenancy is intended by them to be held as such." *In re Estate of Olson, supra* at 859. *Accord, Rogers Walla Walla, Inc. v. Ballard,* 16 Wn. App. 81, 89, 553 P.2d 1372 (1976), *review*

---

siderations are lacking when a community property agreement provides for disposition of community property to other than the surviving spouse.

*denied,* 88 Wn.2d 1004 (1977); *In re Estate of Patton,* 6 Wn. App. 464, 481, 494 P.2d 238, *review denied,* 80 Wn.2d 1009 (1972).

Margaret and Edward Lyon clearly intended to hold all property as a community. In 1962, and again in 1979, they had voluntarily signed "three–pronged" community property agreements. Such agreements provide a simple, certain way of disposing of community property upon death of either spouse. *Neeley v. Lockton,* 63 Wn.2d 929, 389 P.2d 909 (1964) (community property agreement controlled inconsistent pension plan beneficiary designation). Hence, the preexisting community property agreement precluded the creation of a joint tenancy.

The four unities of time, title, possession, and interest, are also essential to create a joint tenancy. *In re Estate of Oney,* 31 Wn. App. 325, 328, 641 P.2d 725, *review denied,* 97 Wn.2d 1023 (1982); *Merrick v. Peterson,* 25 Wn. App. 248, 606 P.2d 700 (1980). Inconsistencies with the concurrent characterization of community property as a joint tenancy destroy the unity of interest necessary to create a joint tenancy. For instance, joint tenants while living may alienate half of the property, while community property may not be given without the express or implied consent of the other spouse. RCW 26.16.030(2). *See* Washington State Bar Ass'n, *Community Property Deskbook* § 47.10 (1977); Lamka, *Property—Community Property and Joint Tenancy: Creating Survivorship Rights in Washington—In re Estate of Olson, 87 Wn.2d 855, 577 P.2d 302 (1976),* 53 Wash. L. Rev. 557, 566 (1978). Joint tenants have no testamentary control, but either spouse may devise or bequeath by will up to one–half of the community property. RCW 26.16.030(1). Without the unity of interest, the joint tenancy failed and was converted into a tenancy in common. *Cf. Merrick v. Peterson, supra* at 258 (agreement giving each party a 50 percent interest in the judgment proceeds was a divided interest of the whole). Richard and Margaret

hold the Snohomish County property as tenants in common due to the failure of the joint tenancy gift.

BRACHTENBACH, J., concurs with DOLLIVER, J.