[Nos. 24113-3-I; 24204-1-I.   Division One.   January 28, 1991.]

BARBARA HARRIS, *Appellant*, v. WANDA HARRIS, *Respondent*.

[5]105 Wn.2d 889, 719 P.2d 554 (1986).

*Lee Olwell, Malcolm Edwards, Clinton H. Hattrup,* and *Benson, Hattrup & Stege,* for appellant.

*William F. Knowles* and *Julin, Fosso, Sage, McBride & Mason,* for respondent.

*Keith Gormley Baldwin* and *Marilee C. Erickson* (of *Reed McClure*) on behalf of Teachers Insurance and Annuity Association of America, amicus curiae.

BAKER, J.—In this case we are asked to review competing claims of a widow and a former spouse to the retirement annuity plan benefits of the deceased former husband.

### FACTUAL AND PROCEDURAL BACKGROUND

Frederic Harris and Wanda Harris were married from May 27, 1967, to July 15, 1971. They had one son. During their marriage, Frederic named Wanda as primary beneficiary, and their son as contingent beneficiary, of retirement annuity proceeds payable upon Frederic's death. Frederic's retirement annuity plan was offered through his employer, the University of Washington, and provided by the Teacher's Insurance and Annuity Association of America (TIAA). Frederic and Wanda's divorce decree awarded the interest in the retirement annuity plan to Frederic. TIAA's records

showed that Wanda remained the designated primary beneficiary at the time of Frederic's death.

Frederic was remarried in 1971 to Barbara Harris, and remained married to her until his death in 1988. During their marriage, Frederic executed a will naming Barbara as executrix and leaving her all of his property. Four months prior to Frederic's death, Frederic and Barbara entered into a 3–pronged community property agreement. The agreement provided:

> Section 1. All property of whatsoever nature or description, whether real, personal or mixed, and wheresoever situated, now owned or hereafter acquired by us or either of us, whether separate or community property, shall be construed and is hereby declared to be community property.
>
> Section 2. Upon the death of either of us, title to all community property, as herein defined, shall immediately vest in fee simple in the survivor of us.

Barbara alleges that a few days after the entry of the divorce decree in Frederic's prior marriage, Frederic submitted a form to the University of Washington changing the beneficiary of his TIAA plan from Wanda to Barbara. TIAA has no record of this. Barbara supports this allegation with her own affidavit and with handwritten notes, attached to her affidavit, purportedly written by Frederic.

Barbara Harris filed this action on September 8, 1988, against Wanda Harris, TIAA, and the University of Washington, seeking a declaration that she is the beneficiary of Frederic's TIAA retirement plan and seeking an award of all benefits thereunder. Alternatively, she sought damages for negligence against TIAA and the University of Washington, who she alleges lost the change of beneficiary form that Frederic allegedly filled out in her favor. The negligence claim is not at issue on this appeal.

Barbara moved for summary judgment based on the community property agreement and her own affidavit. Wanda filed a cross motion for summary judgment, claiming that as named beneficiary of the TIAA contract, she is entitled to all of the proceeds except one–half of the

amount attributable to contributions made during the marriage of Frederic and Barbara. Wanda also filed a motion to strike Barbara's affidavit, claiming the affidavit was inadmissible under the deadman's statute, RCW 5.60.030.

The trial court entered an order striking Barbara's affidavit. It later denied Barbara's motion for summary judgment and granted Wanda's cross motion for summary judgment. In a subsequent order, the trial court divided the benefits between the parties, awarding Barbara one–half of the value attributable to the contract after the second marriage.

Barbara Harris appealed all of the trial court's rulings. Wanda Harris cross–appealed the trial court's order regarding distribution of the funds between the parties, contending the trial court failed to award her all of the growth traceable to the contributions she was awarded.

# I

A motion for summary judgment should be granted only if the pleadings, affidavits, depositions, and admissions on file demonstrate that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). In this case, only questions of law were raised by the parties, so the case was appropriately resolved on summary judgment.

Barbara Harris claims she is entitled to all of the proceeds of her deceased husband's retirement annuity contract by virtue of their community property agreement. She argues that this case is controlled by *Neeley v. Lockton,* 63 Wn.2d 929, 389 P.2d 909 (1964). In *Neeley,* the decedent participated in a pension plan funded by his employer for 13½ years. During that time, he was married three times to three different women. During his first marriage, he designated his first wife as beneficiary of the accrued contributions in the event of his death before retirement. After his second marriage, he changed the beneficiary to his second

wife. Although he took a third wife after divorcing the second, the designation of his second wife as beneficiary was never changed, and she remained the designated beneficiary at the time of his death. However, during his third marriage, he entered into a community property agreement which provided that all property of both spouses was declared to be community property, and that upon the death of either, all property would pass to the survivor. He remained married to his third wife until the time of his death.

The three wives stipulated that each was entitled to one-half of the funds accrued during her marriage, these funds being community property. The only funds in dispute were decedent's separate property, consisting of contributions made during the intervals when he was single, and the other one-half of the community property contributions, which became his separate property upon failure of either divorce decree to mention the pension fund.

The *Neeley* court was confronted with a conflict between the beneficiary designation in the pension fund and the community property agreement. Under the terms of the beneficiary designation, the decedent's separate property interest in the pension plan went to the named beneficiary (second wife) upon his death. Under the terms of the community property agreement, the decedent's separate property interest in the pension plan was converted to community property upon execution of the agreement, and went to his widow (third wife) upon his death.

██ The majority held that the community property agreement, rather than the beneficiary designation, controlled the disposition of the husband's interest in the pension plan. The court's reasoning began with the principle that "contracts, and particularly beneficiary designations, will control only to the extent that they are not inconsistent with the community property law", *Neeley,* 63 Wn.2d at 932 (citing *Wilson v. Wilson,* 35 Wn.2d 364, 212 P.2d 1022 (1949)). Since community property agreements are solely the creature of community property law, created by RCW

26.16.120,[1] the court accorded them the status of law rather than contract, and went on to examine the legislative intent behind the law. *Neeley,* 63 Wn.2d at 933–34. The basic consideration behind RCW 26.16.120, the court found, was to provide a simple and certain way of disposing of community property upon the death of either spouse. This legislative purpose should be given full force and effect by according reasonable amplitude and scope to the community property agreement. The words "'whole or any portion of'" in the statute evidence an intent that the agreement be all inclusive. *Neeley,* 63 Wn.2d at 934.

The *Neeley* court also based its reasoning on the expectations of the husband and wife entering such an agreement. The agreement expressly includes any and all property of either of them, and so they have a right to rely on the assertion that no interest has been reserved by a previous inconsistent beneficiary designation. In contrast, the court found that the pension company's need for administrative convenience in ascertaining claimants to the fund was a far lesser interest. *Neeley,* 63 Wn.2d at 935.

Appellant Barbara Harris correctly asserts that the facts of her case are on all fours with *Neeley. Neeley* was decided

---

[1]RCW 26.16.120 provides, in pertinent part:

> Nothing contained in any of the provisions of this chapter or in any law of this state, shall prevent the husband and wife from jointly entering into any agreement concerning the status or disposition of the whole or any portion of the community property, then owned by them or afterwards to be acquired, to take effect upon the death of either.

As the court in *Neeley* recognized, *Neeley,* 63 Wn.2d at 933, only one of the three prongs of the typical community property agreement was created by RCW 26.16.120. The three prongs are:

> (1) that all property then owned by either spouse was converted to community property; (2) that all property later acquired would be community property; and (3) that upon death of one spouse all community property would vest in the survivor.

*Lyon v. Lyon,* 100 Wn.2d 409, 411, 670 P.2d 272 (1983) (citing Washington State Bar Ass'n, *Community Property Deskbook* § 18.7 (1977)).

Only (3), the survivorship prong, was created by the statute. The other prongs were authorized not by statute, but by case law. *See Bosone v. Bosone,* 53 Wn. App. 614, 617, 768 P.2d 1022 (1989), and cases cited therein.

in 1964 and has not been overruled or questioned in any other case. It was cited as current law in Cross, *The Community Property Law in Washington,* 61 Wash. L. Rev. 13 (1986). It has been relied on in subsequent cases for some general propositions, but not for its holding. *See, e.g., Porter v. Porter,* 107 Wn.2d 43, 53, 726 P.2d 459 (1986) (contracts will control only to the extent that they are not inconsistent with the community property law); *Bosone v. Bosone,* 53 Wn. App. 614, 617, 768 P.2d 1022 (1989) (the basic consideration of the community property agreement statute is to provide a simple and certain way of disposing of the community property upon death of either spouse).

One other case, *Lyon v. Lyon,* 100 Wn.2d 409, 670 P.2d 272 (1983), has dealt with the conflict between a community property agreement and another instrument granting survivorship rights. In *Lyon,* two brothers, Richard and Edward, were deeded property as joint tenants. In a joint tenancy, the surviving joint tenant takes sole title upon the death of the other. *Lyon,* 100 Wn.2d at 411. Prior to the conveyance of this property, Edward had entered into a 3–pronged community property agreement with his wife. The court held that the joint tenancy interest conveyed to Edward had become community property immediately upon conveyance. Thus, a joint tenancy existed between Edward and his wife on the one hand, and Richard on the other. Upon Edward's death, there was a conflict between the joint tenancy right of survivorship and the community property agreement right of survivorship, both of which purported to take effect immediately upon death. The court held that the community property agreement controlled, and awarded Edward's one–half of the community interest in the joint tenancy to his wife. The court based its holding on the policy of the law to favor community property and disfavor joint tenancies. *Lyon,* 100 Wn.2d at 414 (citing *In re Estate of Olson,* 87 Wn.2d 855, 857–58, 557 P.2d 302 (1976)). Like *Neeley, Lyon* demonstrates the strong favor

accorded to community property agreements over other instruments. *See* Cross, 61 Wash. L. Rev. at 103.[2]

Respondent/cross appellant Wanda Harris and amicus curiae TIAA argue that while *Neeley* has not been directly overruled, its viability is doubtful after *Francis v. Francis,* 89 Wn.2d 511, 573 P.2d 369 (1978) and *Aetna Life Ins. Co. v. Wadsworth,* 102 Wn.2d 652, 689 P.2d 46 (1984).

*Francis* held that a husband has the right to dispose of his one–half interest in a community property life insurance policy by designating someone other than his wife as beneficiary. *Francis,* 89 Wn.2d at 515. *Francis* overruled prior case law under which a nonconsenting wife could void entirely the designation of someone other than herself as beneficiary of a community–owned life insurance policy. *See Occidental Life Ins. Co. v. Powers,* 192 Wash. 475, 74 P.2d 27, 114 A.L.R. 531 (1937); and *Wilson v. Wilson,* 35 Wn.2d 364, 212 P.2d 1022 (1949). The *Francis* court stated that these prior cases had "confuse[d] the right of the wife to void an inter vivos gift of community property in its entirety with her right to receive the value of one–half of the community property at the husband's death." *Francis,* 89 Wn.2d at 514.

*Neeley* cited two cases that were overruled in *Francis*— *Occidental Life Ins. Co. v. Powers, supra,* and *Wilson v. Wilson, supra.* While *Neeley* relied on these cases to some extent, it distinguished them as having involved the wife's right to funds contributed during her marriage, which were community property, whereas *Neeley* involved funds which were the separate property of the husband, at least until the date of the community property agreement. *Neeley,* 63 Wn.2d at 932, 934. Thus, the holding in *Neeley* is not cast in doubt by *Francis,* because *Neeley* did not involve the same invasion of the wife's community property rights that *Francis* addressed.

---

[2]The majority in *Lyon* did not cite *Neeley v. Lockton, supra,* but the concurring opinion did. *Lyon,* 100 Wn.2d at 416 (Dolliver, J., concurring) (preexisting community property agreement should preclude creation of a joint tenancy).

The second case that respondent Barbara Harris claims has eroded the holding of *Neeley* is *Aetna Life Ins. Co. v. Wadsworth,* 102 Wn.2d 652, 689 P.2d 46 (1984). In *Wadsworth,* the dissolution decree between the decedent and his first wife purported to transfer all of her interest in all life insurance policies on decedent's life to him as his separate property. The first wife, however, remained named as beneficiary of a term life insurance policy at the time of his death. *Wadsworth,* 102 Wn.2d at 653. The court held that the dissolution decree's transfer of all life insurance policies, without mention of the first wife's expectancy as beneficiary, was not sufficiently clear nor specific to indicate an intent to divest the first wife of her expectancy. *Wadsworth,* 102 Wn.2d at 663–64.[3] The court established a new rule for determining the beneficiary in such a case:

> To the extent no community property rights are invaded, the named beneficiary will generally be entitled to the proceeds. A dissolution decree will divest the former spouse of his or her expectancy as named beneficiary, however, if (1) the dissolution decree, in clear and specific language, states that the former spouse is to be divested of his or her expectancy as beneficiary *and* (2) the policy owner formally executes this stated intention to change the beneficiary within a reasonable time after the dissolution decree has been entered. . . . In any event, 1 year after dissolution, it shall be conclusively presumed that the policy owner intended to retain the named beneficiary as the one entitled to the proceeds.

*Wadsworth,* 102 Wn.2d at 662–63.

Respondent Wanda Harris argues that her case is controlled by *Wadsworth.* The divorce decree between herself and Frederic Harris, like the decree in *Wadsworth,* only divested her of her community property interest in Frederic's annuity contract, not her expectancy as named beneficiary, since it did not clearly and specifically mention that expectancy. As in *Wadsworth,* Frederic failed to change the beneficiary designation within 1 year after the divorce, so it

---

[3]The court in *Wadsworth* also held that the character of funds used to pay for the most recent term should determine the character of a term life insurance policy. *Wadsworth,* 102 Wn.2d at 659. This holding is not relevant to the present case.

is conclusively presumed that he intended to retain Wanda as beneficiary. The conclusive presumption of *Wadsworth* operates as long as no community property rights are invaded. Since Wanda concedes, and the trial court ruled, that Frederic's widow is entitled to one–half of the proceeds from contributions made during her marriage to Frederic, no community property rights are invaded. Therefore, Wanda argues, she is entitled to the remainder of the proceeds as named beneficiary.

In *Wadsworth,* the beneficiary designation was in conflict with a divorce decree, whereas in the present case the beneficiary designation is in conflict with a community property agreement. Community property agreements are particularly favored in our law and have been held to control over other inconsistent instruments. *See Neeley v. Lockton,* 63 Wn.2d 929, 935, 389 P.2d 909 (1964) (community property agreement controlled over inconsistent beneficiary designation in pension plan); *Lyon v. Lyon,* 100 Wn.2d 409, 670 P.2d 272 (1983) (community property agreement controlled over inconsistent survivorship right in joint tenancy); Cross, 61 Wash. L. Rev. at 103. For this reason, the present case is distinguished from *Wadsworth.*

Another reason for distinguishing *Wadsworth* is in that case, the conflict between the divorce decree and the beneficiary designation was only an apparent conflict, not a real one. The beneficiary designation was held to create an expectancy, not a property interest, and thus it was simply not covered in the divorce decree, which only disposed of *property* interests in the insurance policy. By contrast, in *Neeley* and in the present case, the community property agreement and the beneficiary designation truly are in conflict. Both are quasi–testamentary devices, Comment, *The Community Property Agreement: A Probate Cure with Side Effects,* 18 Gonz. L. Rev. 121, 130 (1982–1983); *Francis v. Francis,* 89 Wn.2d at 514, and both purport to convey survivorship rights in the same property, at the same moment, but to different persons. The court in *Wadsworth* prefaced its holding by stating, "[t]o the extent

no community property rights are invaded, the named beneficiary will generally be entitled to the proceeds." *Wadsworth,* 102 Wn.2d at 662–63. In the present case, community property rights, as created by the community property agreement, *would* be invaded by giving effect to a conflicting beneficiary designation.[4]

For these reasons, we hold that neither *Wadsworth* nor *Francis* undermined the validity of *Neeley. Neeley* controls in this case and is still good law. The reasoning of *Neeley* was based on fulfilling the expectations of the spouses in a community property agreement. That reasoning remains sound.[5]

We reverse and remand with directions to enter judgment in favor of Barbara Harris. Our disposition makes it unnecessary to consider the propriety of the trial court's order striking appellant's affidavit, and likewise makes it unnecessary to consider Wanda Harris' cross appeal.

GROSSE, C.J., and COLEMAN, J., concur.

Review denied at 116 Wn.2d 1025 (1991).

---

[4]The court in *Wadsworth* adopted the position put forth by amicus curiae University of Washington Law School, represented by Harry M. Cross. *Wadsworth,* 102 Wn.2d at 662. The year after *Wadsworth* was decided, Professor Cross revised his article on community property and in it discussed *Neeley* as current law. Cross, 61 Wash. L. Rev. at 103. Thus, a leading authority on community property law has found no reason to question *Neeley* in light of *Wadsworth.*

[5]Amicus curiae TIAA argues that our holding will expose annuity companies to the possibility of double liability. If an annuity company distributes the proceeds of a contract to a designated beneficiary and later receives notice of a conflicting claim based on a community property agreement, TIAA argues that the company might be liable to both parties. Brief of TIAA, at 15. Our laws protect annuity companies against double liability in this situation. *See* RCW 49.64.030.